**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

Barbara Winslow, *on behalf of herself and all others similarly situated,*

*Plaintiff,*

v.

Forster & Garbus, LLP, Ronald Forster, Esq., and Mark A. Garbus, Esq.,

*Defendants.*

**COMPLAINT**

*Jury Trial Demanded Hereon*

Plaintiff Barbara Winslow, on behalf of herself and all others similarly situated, for her complaint, alleges as follows:

**NATURE OF ACTION**

1.  This class action seeks to vindicate the rights of consumers who received false and deceptive state court complaints from the high-volume collection law firm of Forster & Garbus, LLP in New York state court consumer collection actions in which Forster & Garbus, LLP represented state court plaintiff, National Collegiate Student Loan Trust 2005 (including, inter alia, "2005-1"; "2005-2" and "2005-3") ("National Collegiate").

2.  Specifically, Defendants' boilerplate state court complaints falsely informed consumers that National Collegiate was "authorized to proceed with this action" and that it was "the original creditor".

3.  In reality, National Collegiate is not the original creditor and is not authorized to file suit because it is prohibited by statute from maintaining a suit in New York until it

**Page 1 of 16**

registers as a foreign entity doing business in New York, something which it has not done. *See* N.Y. GAS. LAW § 18.

4.      In addition, Defendants' boilerplate state court complaints are misleading and deceptive because they are communications that purport to be from an attorney (and which are signed by an attorney) but which were not meaningfully reviewed by an attorney prior to being filed with the Court and sent to consumers.

5.      Defendants' false and unfair misrepresentations violate the Fair Debt Collection Practice Act (FDCPA)  15 USC §§ 1692, *et seq.*, which was designed to prohibit precisely these sorts of abusive, deceptive, and unfair debt-collection practices, as well as New York General Business Law § 349.

## JURISDICTION AND VENUE

6.      This Court has federal question jurisdiction under 15 USC § 1692k(d) and 28 USC § 1331.

7.      Declaratory relief is available pursuant to 28 USC § 2201 and § 2202.

8.      The Court has ancillary jurisdiction over Plaintiff's state law claims pursuant to 28 USC § 1367.

9.      Venue is proper in this district pursuant to 28 USC § 1391, as plaintiff lives in this district and the acts and transactions that give rise to this action occurred, in substantial part, in this district.

10.     Venue is also proper in this district because Defendants conduct business in this district and the injury occurred in this district.

## PARTIES

*Named Plaintiff*

11.     Named Plaintiff Barbara Winslow ("Ms. Winslow" or "Plaintiff") has at all relevant
times been a resident of Kings County, New York State.

12.     Ms. Winslow is a "consumer" as that term is defined at 15 U.S.C. § 1692a(3).

13.     Ms. Winslow was sued in Kings County Civil Court in a consumer collection action
titled *National Collegiate Student Loan Trust 2005-3, a Delaware Statutory Trust v.
Barbara Winslow (31934/2014)* (the "State Court Action").

14.     In that State Court Action, National Collegiate Student Loan Trust 2005-3, a
Delaware Statutory Trust ("National Collegiate") was represented at all relevant times
by Forster & Garbus, LLP.

*Defendants*

15.     Forster & Garbus, LLP is a limited liability partnership organized and existing under
the laws of New York State, with offices in Suffolk and Nassau counties.

16.     Forster & Garbus, LLP is a high volume debt collection law firm that focuses
exclusively or virtually exclusively on representing purported creditors (both original
creditors and debt buyers) in consumer collection actions.

17.     Forster & Garbus, LLP's website describes the firm as "a full service New York Law
Firm concentrating on creditor's rights law since 1970."

18.     Forster & Garbus, LLP is in the business for profit of collecting consumer debt for
others by use of the mail, telephone, and the courts of New York and other means of
interstate commerce.

19.     Forster & Garbus, LLP regularly engages in debt collection, and its principal business

purpose is debt collection.

20.  In sum, Forster & Garbus, LLP is clearly a "debt collector" as that term is defined in the FDCPA.

21.  Ronald Forster, Esq. and Mark A. Garbus, Esq. are each natural persons and, upon information and believe, each has at all relevant times been a principal and owner of Forster & Garbus, LLP.

22.  Upon information and belief, Mr. Forster & Mr. Garbus have final, supervisory authority over all form documents (including form complaints) used by Forster & Garbus, LLP.

23.  Mr. Forster and Mr. Garbus' principle business endeavor is the collection of debts, and each regularly attempts to collect debts alleged to be due another and each is a debt collector under FDCPA § 1692a(6).

24.  Forster & Garbus, LLP as well as each of its two partners, Ronald Forster, Esq. and Mark A. Garbus, Esq. are referred to collectively herein as "F&G".

## NAMED PLAINTIFF'S EXPERIENCES

25.  On May 30, 2014, F&G, on behalf of National Collegiate, filed the State Court Action. A true copy of the State Court Summons and Complaint is annexed hereto as Exhibit A.

26.  The State Court Complaint stated, *inter alia*:

  a.  "Plaintiff [*i.e.*, National Collegiate] is authorized to proceed with this action"; and that

  b.  "Plaintiff [*i.e.*, National Collegiate] is the original creditor [.]"

27.  Each of those statements is false.

28. First, the statement in the Complaint that "Plaintiff is the original creditor" is indisputably false because Bank of America is the original creditor with regard to the loan in question.

29. National Collegiate is not the original creditor of Ms. Winslow nor, upon information and belief, is National Collegiate the original creditor with regard to any other consumer's loan.

30. Rather, at best, National Collegiate is a purported assignee pursuant to a complex, securitized Trust in which student loans held by the Trust must first pass through a complicated web of entities, making the chain of title and National Collegiate's standing a critical issue in any state court collection action.

31. By falsely identifying National Collegiate as the "original creditor", F&G hides the complex structure of these transactions and thus avoids Courts and consumers from inquiring into a range of issues (assignment, standing, correct identification of the actual creditor vs. the servicer, etc.) that, in litigation involving residential foreclosures, has proved famously vexing for the banking industry.

32. F&G's statement in the Complaint that National "is authorized to proceed with this action" is false because National failed to file a certificate of designation with the New York Department of State and is not permitted to maintain a lawsuit in New York.

33. In particular, New York General Assembly Law Section 18 requires an "association" "doing business" in New York to file a certificate of designation before being permitted to bring suit here. *See* N.Y. GAS. LAW § 18.

34. An "association" includes, inter alia, as "business trust", a term which is further defined as "any association operating a business under a written instrument or declaration of trust, the beneficial interest under which is divided into shares represented by certificates." N.Y. GAS. LAW § 2.

35. National Collegiate meets the definition of a "business trust."

36. National Collegiate is "doing business" in New York for purposes of N.Y. GAS. LAW § 18 based upon numerous indicia, including but not limited to the following:

   a. According to the relevant trust documents, National Collegiate maintains an office at 230 Park Avenue in Manhattan.

   b. National Collegiate has undertaken extensive debt collection efforts in New York, including, upon information and belief, taking pre-litigation collection action against thousands of New York consumers, and bringing over 300 state court collection actions in New York state's city and civil courts over the past three years, as well as an unknown number of additional collection actions in other courts around the state. (Because these figures regarding civil and city courts include only courts participating in the New York Unified State Court "eCourts" system, even this figure is undoubtedly low).

   c. The Trust documents defining National Collegiate's activities are virtually entirely focused on New York as the locus of all activity related to the Trust.

   d. For example, the trust documents state that the finance settlement is to take place in New York; specify application of New York law (e.g. with regard to offered securities, the indenture, the grantor trust agreement, the administration agreement and the back-up administration agreement, etc); the securities -- the offering of

which is National Collegiate's purpose -- will be offered through and "will be ready for delivery in book-entry form only through the facilities of" "The Depository Trust Company in New York, New York", which "is a New York-chartered limited-purpose trust company."; the trust documents further provide that the trust Administrator, First Marblehead Data Services, Inc. has a principle place of business in New York City and provide for various tasks to be carried out by a related entity, NCF Grantor Trust 2005, which is described in the relevant documents as a New York Common Law trust.

37. Defendants also violated the FDCPA inasmuch as its attorneys did not meaningfully review Ms. Winslow's account file or the complaint, before signing the complaint and causing it to be filed with the New York State Supreme Court, Kings County, and sent to her.

38. Indeed, the same boilerplate Complaint appears to have been used in hundreds of cases that F&G has filed against consumers on behalf of National Collegiate over the past three years.

39. F&G's failure to review the pleadings before filing them, far from an anomaly, appears to be part of the business plan developed by the F&G, who have found that meaningful pre-filing review is not as profitable as filing of pleadings and motions without review, because the overwhelming majority of consumer collection actions are won on default or against unsophisticated *pro se* litigants who are, as a practical matter, incapable of meaningfully challenging deceptive, boilerplate consumer collection pleadings.

40. Defendants' false and misleading statements may influence the least sophisticated

consumer's decision or ability to challenge a debt; and might reasonably prompt such a consumer to settle rather than litigate, or to settle on less favorable terms than he or she would otherwise accept.

## CLASS ALLEGATIONS

41.     The plaintiff, Barbara Winslow, brings this action on behalf not only of herself, but also on behalf of a class of all other persons similarly situated, pursuant to Fed. R. Civ. P. Rule 23.

42.     Plaintiffs seek to represent the following class and two (2) subclasses defined as follows:

      a.     The Class:

                (i)     Natural persons;

                (ii)     who were sued by National Collegiate;

                (iii)     in a New York state court consumer collection action;

                (iv)     in an action in which F&G represented National Collegiate;

                (v)     and in which the Compliant  states that (a) "Plaintiff is authorized to proceed with this action" and/or (b) "Plaintiff is the original creditor"

      b.     The FDCPA Subclass

                (i)     all those who meet the class criteria set forth above at para. 42(a) and who, in addition, were sent said complaint within one year of the initiation of the instant class action.

    c.      The NYGBL § 349 Subclass:

        (i)      all those who meet the Class definition set forth above at para. 42(a) and who, in addition, were sent said complaint within three years of the initiation of the instant class action.

43.    All members of the Class are also members of one or both of the two subclasses.

44.    Excluded from the Class and subclasses are:

    a.  anyone employed by counsel for Plaintiff in this action; and

    b.  any Judge to whom this case is assigned, as well as his or her immediate family and staff.

**Numerosity:**

45.    The Complaint at issue in this case is a boilerplate document whose language does not materially vary from one action to the next, and which, upon information and belief, was filed in hundreds of consumer actions and sent by Defendants to hundreds of consumers.

46.    The Class and subclasses include hundreds of members and are sufficiently numerous that joinder of all members is impractical.

47.    Although the exact number of Class members and their addresses are unknown to Plaintiffs, they are readily ascertainable from Plaintiffs' records.

**Existence And Predominance Of Common Questions:**

48.    Common questions of law and fact exist as to Plaintiffs and all members of the Class and predominate over questions affecting only individual Class members.

49.    These common questions include:

a. whether the Complaint misrepresented that National (i) was "authorized to proceed" with the state court action, (ii) was "the original creditor" and (iii) mispresented that the Complaint was from an attorney at F&G when it had not been meaningfully reviewed by any of F&G's attorneys.

b. whether such false, misleading and deceptive acts were material in nature.

c. whether Defendants engaged in unfair and/or deceptive debt collection practices in violation of the FDCPA and/or GBL § 349.

d. whether Plaintiff and the other Class members are entitled to statutory damages, costs and attorney's fees under the FDCPA.

e. whether Plaintiff and the other Class members are entitled to damages of $50 each, costs and attorney's fees under GBL § 349.

Typicality:

50.   Plaintiffs' claims are typical of the claims of the Class because, among other things, Plaintiff was

(i)   sued by National Collegiate;

(ii)   in a New York state court consumer collection action;

(iii)   in which National Collegiate, represented by F&G, was the state court plaintiff; and

(iv)   in which a Complaint containing the relevant false boilerplate allegations was filed with the Court and sent to her.

51.   Thus, plaintiff's claims – based on the same boilerplate misstatements of law and facts as the claims of all other class members -- are typical of the claims of the class.

52.     Put differently, all of the claims are based on the same factual and legal theories and the plaintiff, together with each class member, have been subjected the same false and deceptive communications and acts by Defendants.

Adequacy:

53.     Plaintiff will fairly and adequately represent the interests of the class members. Her interests do not conflict with the interests of the members of the Class she seeks to represent.

54.     Plaintiff has retained counsel experienced in prosecuting class actions and in consumer protection matters. There is no reason why this plaintiff and her counsel will not vigorously pursue this matter.

Superiority:

55.     The class action is superior to other available means for the fair and efficient adjudication of the claims at issue herein.

56.     The damages suffered by each individual Class member may be limited. Damages of such magnitude are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct.

57.     Further, it would be virtually impossible for the members of the Class effectively to individually redress the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, the court system could not.

58.     Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the complex legal and factual issues of the case.

59.    By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

60.    In the alternative, the Class may be certified because:

(a)    the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members which would establish incompatible standards of conduct for Defendants;

(b)    the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

(c)    Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

**COUNT I**
*(Violation of the Fair Debt Collection Practices Act)*

61.    Plaintiff hereby restates, realleges, and incorporates by reference all foregoing paragraphs.

62.    Congress enacted the Fair Debt Collection Practices Act to stop "the use of abusive, deceptive and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a).

63. A debt collector may not "use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

64. This prohibition includes, inter alia:

    a. the false representation of "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A);

    b. "[t]he threat to take any action that cannot legally be taken."  15 U.S.C. § 1692e(5).

    c. "[t]he use or distribution of any written communication . . . which creates a false impression as to its source, authorization, or approval." 15 U.S.C. § 1692e(9); as well as

    d. the "use of any false representation or deceptive means to collect or attempt to collect any debt." 15 U.S.C. § 1692e(10).

65. A debt collector may not "use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.

66. This prohibition includes, inter alia: "The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f.

67. Defendant violated the FDCPA in its attempt to collect from Plaintiff and all others similarly situated because the Complaint:

    a. Falsely represents that National Collegiate (i) was "authorized to proceed" with the state court action, (ii) was "the original creditor" in violation of

15 USC §§ 1692e, 1692e(2)(A), 1692e(5), 1692e(9) and 1692(e)(10); 15 USC § 1692f and § 1692f(1).

   b.   Filing a Complaint that was deceptive and misleading in that it was signed by an attorney but was not in fact meaningfully reviewed by an attorney, in violation of §§1692e, 1692e(3), 1692e(5), 1692e(10), and 1692f;

68.   As a result of Defendant's violations of the FDCPA, Plaintiff and the Class are entitled to declaratory judgment, statutory damages, costs and attorneys' fees pursuant to 15 U.S.C. § 1692k.

**COUNT II**
(New *York State General Business Law § 349*)

69.   Plaintiffs hereby repeats and re-alleges and incorporates by reference all foregoing paragraphs.

70.   Each of the deceptive acts and practices set forth above, including but not limited to each deceptive act and practice set forth in the First Cause of Action was committed in the conduct of business, trade, commerce or the furnishing of a service in this state and constituted a violation of § 349 independent of whether it also constituted a violation of any other law.

71.   Each of these actions was consumer oriented and involves misleading conduct that is recurring and has a broad impact upon the public.

72.   Specifically, and without limitation, as set forth herein, Defendants falsely stated in the Complaint that National (i) was "authorized to proceed" with the state court action, and (ii) was "the original creditor".

73.   These misstatements misinform consumers as to important legal rights they have in state court collection actions.

**Page 14 of 16**

74.  By making these misstatements with regard to the rights of consumers in state court collection actions (*e.g.*, not to be the subject of a collection suit by an unregistered foreign trust), F&G has impaired the exercise of those rights.

75.  Plaintiff and all others similarly situated have been damaged thereby.

76.  Upon information and belief the defendants' conduct as set forth herein has been frequent, intentional, and persistent.

77.  As a result of Defendant's violations of § 349, Plaintiff and each other member of the NYGBL§ 349 subclass are entitled to declaratory judgment; damages of $50 each, injunctive relief, punitive damages, costs and attorneys' fees.

*[rest of page intentionally left blank]*

**WHEREFORE** plaintiff and members of the class respectfully request that this Court award:

A. An order certifying this case as a class action under Fed. R. Civ. P. 23, naming Plaintiff as Class Representative, and appointing her attorneys as Class Counsel;

B. A judgment declaring that Defendants have committed the violations of law alleged in this action;

C. Statutory damages pursuant to the FDCPA;

D. $50 per class member, injunctive relief, as well as punitive damages, pursuant to NYGBL § 349.

E. An order awarding disbursements, costs, and attorneys' fees pursuant to the FDCPA and NYGBL § 349; and

F. Such other and further relief that may be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury as to all issues so triable.

DATED: May 22, 2015

DANIEL A. SCHLANGER, ESQ.
Schlanger & Schlanger, LLP
343 Manville Road
Pleasantville NY 10570
T. 914.946.1981, ext. 101
F. 914.946.2930
daniel.schlanger@schlangerlegal.com

*ATTORNEYS FOR PLAINTIFF*