# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

———————————————————————————

BARBARA WINSLOW, on behalf
of herself and all others
similarly situated,

        Plaintiff,

v.

FORSTER & GARBUS, LLP, *et al*.,

        Defendants.

———————————————————————————

**INDEX:  15-cv-02996 (AYS)**

**Hon. Anne Y. Shields**


## PLAINTIFF'S OPPOSITION TO DEFENDANTS'
## <u>MOTION FOR SUMMARY JUDGMENT</u>


April 21, 2017


Daniel A. Schlanger
Benjamin A. Silverman
Kakalec & Schlanger, LLP
85 Broad Street, 18th Floor
New York NY 10004
T. 212-500-6114
F. 646-612-7996
dschlanger@kakalec-schlanger.com
bsilverman@kakalec-schlanger.com

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ...................................................................................................... 1

PROCEDURAL HISTORY ..................................................................................................... 2

ARGUMENT ........................................................................................................................ 4

    I.     STANDARD OF REVIEW ...................................................................................... 4

    II.    THE WINDLOW COMPLAINT FALSELY IDENTIFIED NCSLT AS THE "ORIGINAL CREDITOR" .................................................................................................. 5

    III.   DEFENDANTS FALSELY STATED THAT NCSLT WAS AUTHORIZED TO BRING LAWSUITS IN NEW YORK .................................................................................... 9

        A.    Defendant's Misrepresentation as to NCSLT's Capacity To Sue in New York Was Materially Deceptive ................................................................................................ 10

        B.    Defendants' Deception Was Not a Mere Technicality ............................................. 11

        C.    NCSLT Was Required To File a Certificate of Designation With the New York Secretary of State ................................................................................................... 12

            1.    A Factual Dispute Exists as to NCSLT's Business Activities in New York .......... 12

            2.    The Complaint Adequately Pleads that NCSLT Does Business in New York Sufficient To Require It To Register ......................................................................... 14

    IV.   THE COMPLAINT'S MEANINGFUL REVIEW ALLEGATIONS ARE SUFFICIENT ...................................................................................................................... 19

    V.    PLAINTIFF'S GBL CLAIM SHOULD NOT BE DISMISSED ................................... 20

        A.    GBL § 601 Does Not Bar Plaintiff's Claim ........................................................... 20

        B.    Plaintiff Has Standing To Pursue a GBL Claim ...................................................... 21

    VI.   THE FDCPA CLAIM IS NOT BARRED BY THE ABSTENTION DOCTRINE ....... 22

    VII.  THE CLAIMS AGAINST INDIVIDUAL DEFENDANTS SHOULD NOT BE DISMISSED ........................................................................................................................ 24

CONCLUSION .................................................................................................................... 26

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Advanced Magnetics, Inc. v. Bayfront Partners*, 106 F.3d 11 (2d Cir. 1997) .............................. 11

*Aghaeepour v. N. Leasing Sys.*, 2015 U.S. Dist. LEXIS 161018 (S.D.N.Y. Dec. 1, 2015) ... 23, 24

*Badolato v. Long Island R.R.*, 2016 U.S. Dist. LEXIS 147713 (E.D.N.Y. Oct. 24, 2016) .......... 14

*Nat'l Collegiate Student Loan Trust 2003-1 v. Beverly*, 2014 Ohio App. LEXIS 4258

    (Ohio Ct. App., Huron County Sept. 30, 2014)…………………………………………..9

*Campbell v. MBI Assocs., Inc.*, 98 F. Supp. 3d 568 (E.D.N.Y. 2015) ......................................... 24

*Carvalho v. Mel S. Harris & Assocs.*, 2004 U.S. Dist. LEXIS 12963 (E.D.N.Y. July 13, 2004) 16,

  17

*Centurion Capital Corp. v. Guarino*, 38 Misc. 3d 1216(A), 1216A (Civ. Ct. 2012) .................. 17

*Charles v. Cnty. of Nassau*, 116 F. Supp. 3d 107 (E.D.N.Y. 2015) ............................................ 14

*Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993) ........................................................................ 5

*Colonial Credit Corp v Beyers*, 46 Misc. 3d 1221(A) (Civ. Ct. N.Y. Cnty. 2015) ..................... 17

*Colorado River Conservation Dist. v. United States*, 424 U.S. 800 (1976) ................................ 24

*Conboy v. A&T Corp.*, 241 F.3d 242 (2d Cir. 2001) .................................................................... 22

*Continental Shows, Inc. v. Essex County Agricultural Society, Inc.*,

    404 N.Y.S.2d 418 (3d Dep't 1978) ........................................................................................ 15

*Dazza v. Kirschenbaum, Pillips & Levy, P.C.*,

    2017 U.S. Dist. LEXIS 54199 (D. Md. Apr. 10, 2017) ....................................................... 25

*Denmark Cheese Ass. v. Hazard Advertising CO.*,

    59 Misc. 2d (N.Y. Cnty. S. Ct. Mar. 11, 1969)..................................................................... 11

*Diaz v. Portfolio Recovery Assocs., LLC*, 2

    2012 U.S. Dist. LEXIS 72724 (E.D.N.Y. May 23, 2012) .................................................... 21

*Dittmer v. Cty. of Suffolk*, 146 F.3d 113 (2d Cir. 1998).............................................................. 24

*Easterling v. Collecto, Inc.*, 692 F.3d 229 (2d Cir. 2012) ............................................................. 5

*Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215 (N.D.N.Y. 2010).................................. 24

*Faltynowicz v. Battery Park City Auth.*, 846 F.3d 58 (2d Cir. 2017) ............................................ 4

*Fritz v. Resurgent Capital Servs., LP*, 955 F. Supp. 2d 163 (E.D.N.Y. 2013) ........................... 25

*Gearing v. Check Brokerage Corp.*, 233 F.3d 233  (7th Cir. 2000) ......................................... 6, 8

*Genesco Entertainment v. Koch*, 593 F. Supp. 743 (S.D.N.Y. 1984)........................................... 23

*Gomez v. Resurgent Capital Servs., LP*, 129 F. Supp. 3d 147 (S.D.N.Y. 2015) ................... 22, 26

*Grant-Hall v. Cavalry Portfolio Servs., LLC*, 856 F. Supp. 2d , (N.D. Ill. 2012) ....................... 12

*Heathman v. Portfolio Recovery Assocs., LLC*,

    2013 U.S. Dist. LEXIS 98742 ........................................................................................ 6, 8

*Int'l Fuel & Iron Corp. v. Donner Steel Corp.*, 242 N.Y. 224 (1926)......................................... 16

*Kaff v. Nationwide Credit, Inc.*, 2015 U.S. Dist. LEXIS 182048

    (E.D.N.Y. Mar. 31, 2015) .................................................................................... 8, 11, 12

*Kuhne v. Cohen & Slamowitz, LLP*, 579 F.3d 189 (2d Cir. 2009) ................................................. 6

*M.V.B. Collision, Inc. v. Allstate Ins. Co.*, 728 F. Supp. 2d 205 (E.D.N.Y. 2010)...................... 22

*Martinez v. LVNV Funding LLC*, 2016 U.S. Dist. LEXIS 136613 (E.D.N.Y. Sept. 30, 2016).... 22

*Midland Funding LLC v. Austinnam*, 46 Misc. 3d 1207(A)

    (Mt. Vernon City Court Jan. 6, 2015)................................................................................ 8

*Miller v. Upton*, 687 F. Supp. 2d 86 (E.D.N.Y. 2009).................................................................. 21

*Nat'l Collegiate v. Grosik*, 2014 Ohio Misc. LEXIS 17104 (Ohio C.P. Dec. 4, 2014)…………...9

*Nat'l Collegiate Student Loan Trust 2006-2 v. Ramirez*,

    2017 Tex. App. LEXIS 2030 (Tex. App. Fort Worth Mar. 9, 2017)……………….……….9

*Nat'l Collegiate Student Loan Trust 2007-3 v. Smith*,
    2015 Pa. Dist. & Cnty. Dec. LEXIS 10663 (Pa. C.P. 2015)………………………………9
*Nat'l Collegiate Student Loan Trust 2005-2 v. Hair*,
    2015 Ohio App. LEXIS 947 (Ohio Ct. App., Mahoning County Mar. 3, 2015)…………...9
*N.Y. State Catholic Health Plan, Inc. v. Acad. O & P Assocs.*, 312 F.R.D. 278

    (E.D.N.Y. 2015)............................................................................................................... 15

*NCO Portfolio Mgt. v. Wilson*,

    2014 N.Y. Misc. LEXIS 5649 (Buffalo City Ct. Dec. 10, 2014) ...................................... 8

*Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*,

    673 F.3d 84  (2d Cir. 2012)......................................................................................... 24, 25

*Northway Exchange, Inc. v. Dufrane*, 258 A.D.2d 766 (3d Dep't 1999) .................................... 11

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,

    85 N.Y.2d 20 (N.Y. 1995) ......................................................................................... 21, 23

*Parkwood Furniture Co. v. OK Furniture Co.*, 429 N.Y.S.2d  240 (2d Dep't 1980).................. 15

*Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123 (2d Cir. 2001).......................... 15

*Polanco v. NCO Portfolio Mgmt*, 132 F. Supp. 3d 567 (S.D.N.Y. 2015) ................................... 26

*Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379 (3d Cir. 2000) ................................ 26

*Posadas de Mexico, S.A. de C.V. v. Dukes*, 757 F. Supp. 297 (S.D.N.Y. 1991) ......................... 10

*Russell v. Equifax A.R.S.*, 74 F.3d 30 (2d Cir. 1996) ...................................................... 5

*Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP*,

163 F. Supp. 3d 109 (S.D.N.Y. 2016) .................................................................. 22

*Scott v. E. Hope Greenberg*, 2017 U.S. Dist. LEXIS 50822 (E.D.N.Y. Mar. 31, 2017) .............. 22

*Thomas v. Portfolio Recovery Assocs. LLC*, 2013 U.S. Dist. LEXIS 113639

(S.D. Cal. Aug. 12, 2013) ..................................................................................... 6

*Toohey v. Portgolio Recovery Assocs., LLC*,

2016 U.S. Dist. LEXIS 111534 (S.D.N.Y. 2016) ................................................ 23

*Tourgeman v. Collins Fin. Servs.*, 755 F.3d 1109 (9th Cir. 2014) ........................................... 6, 8

*Vincent v. Money Store*, 736 F.3d 88 (2d Cir. 2013) ................................................... 7

## Statutes and Rules

15 U.S.C. § 1692a ....................................................................................................... 25, 30

15 U.S.C. § 1692e ............................................................................................................... 7

60 C.F.R. §16771 ................................................................................................................. 9

22 N.Y.C.R.R. § 202.27-a(2) .............................................................................................. 9

N.Y. Bus. Corp. Law § 1312 .............................................................................................. 12

N.Y. Bus. Corp. Law § 1505 .............................................................................................. 29

N.Y. Gen. Ass'n Law § 2 ..................................................................................................... 4

N.Y. Gen. Ass'n Law § 18 ............................................................................... 12, 13, 17, 18

Plaintiff, Barbara Winslow, by and through her undersigned counsel, respectfully submits this opposition to Defendants Forster & Garbus, LLP's ("F&G"), Ronald Forster's ("Forster"), and Mark Garbus' ("Garbus") Motion for Summary Judgment.

## PRELIMINARY STATEMENT

Defendants do not and cannot dispute that the state court collection complaint it filed against Ms. Winslow and the other putative class members (the "State Court Complaint") asserted that Defendants' client, National Collegiate Student Loan Trust 2005 ("NCSLT"),[1] was the "original creditor," even though the debt was originated by Bank of America ("BOA"). Moreover, despite the State Court Complaint's assertion that NCSLT was "authorized" to bring suit, NCSLT is barred from commencing lawsuits in New York because it failed to file a designation certificate and failed to pay fees it owes to the Secretary of State.

Attempting to explain away its false representations, Defendants' motion relies on a mixture of unpersuasive legal arguments, documents never produced in discovery, and affidavit testimony from people whose depositions have not yet occurred (and who were not included in initial disclosures). Indeed, weeks before depositions of each defendant and NCSLT were to be conducted, Defendants sought and obtained a stay of merits discovery in this action based on a representation to this Court that the instant Motion would only address questions of law.

Defendants' legal arguments and proffered "evidence" are insufficient to obtain summary judgment, and Defendants' gaming of the discovery process should likewise not be tolerated.

## STATEMENT OF FACTS

On May 30, 2014, F&G, on behalf of NCSLT, filed the State Court Complaint in the Civil Court of the City of New York, County of Kings, and sent a copy to her at her home.

---

[1] NCSLT consists of three subsidiary trusts: National Collegiate Student Loan Trusts 2005-1, 2005-2, and 2005-3. (Compl. ¶ 1). *See also* Schlanger Decl. ¶¶ 64-67.

1

(Leinoff Decl. Ex. 13.)   The State Court Complaint seeks to collect student loan debts and avers that NCSLT is both (i) "the original creditor" of the student loan debt at issue and (ii) "authorized to proceed with this action."  (Defendants' 56.1 Statement ("Def. 56.1") No. 3.). Both of these statements are false and deceptive.

The State Court Complaint's averment that NCSLT is "the original creditor" is false and deceptive because, as Defendants concede, BOA was the originator of the loan at issue (*see* Def. 56.1 No. 3).  The deception is material because it misleads consumers concerning potentially dispositive defenses – including standing and the assignee's ability to prove up its case by accessing underlying account documents.  Indeed, these issues have vexed the banking industry in foreclosure litigation involving similar Trust structures as NCSLT.

The State Court Complaint's averment that NCSLT is "authorized to proceed with this action" is likewise false and deceptive.  Section 18 of the New York General Associations Law requires an "association" "doing Business" in New York to file a certificate of designation before it is permitted to bring suit here.  An "association" includes a "business trust," which is defined as "any association operating a business under a written instrument or declaration of trust, the beneficial interest under which is divided into shares represented by certificates."  N.Y. Gen. Ass'ssn Law § 2.  Because NCSLT is a "business trust," and because it failed to file a certificate of designation with the Secretary of State, the assertion in the State Court Complaint that NCSLT is "authorized to proceed" in a lawsuit against Ms. Winslow in New York State court is false.

Put simply, the State Court Complaint deceives courts and consumers alike by averring that NCSLT is a plaintiff who is actually authorized to pursue a civil action in New York.

## PROCEDURAL HISTORY

The instant Motion was filed before the parties engaged in critical aspects of merits discovery, including depositions of any defendants or of NCSLT (which as of yet has produced

2

no discovery) concerning its structure and business activities in New York.

Prior to Defendants' requested stay of discovery, the parties agreed that Tier II merits depositions of each of the defendants would occur in January or February of 2017. (Schlanger Decl. ¶¶ 40-45.) Those depositions were to address, *inter alia*, the individual defendants' roles in the State Court Complaint and the quality of their review, if any, before the State Court Complaint was filed and served. (*Id.* ¶¶ 54-55.) At present, Defendants have <u>not</u> been deposed on these or any other merits-related topics.[2] Further, on January 5, 2017, Plaintiff noticed Defendants of four third-party subpoenas addressed to NCSLT subsidiary trusts and their managing agent seeking documents and depositions concerning NCSLT's business activities in New York, a dispositive issue in this case. Because of the stay, these critical third-party depositions also have yet to take place.

On November 14, 2016, Defendants' counsel submitted a pre-summary judgment motion letter (Dkt. No. 45) highlighting exclusively legal arguments he wished to raise. At the pre-motion conference before Judge Azrack on January 11, 2017, while the parties were still conducting merits discovery and before any Tier II depositions occurred, Defendants' counsel represented that he intended to move for summary judgment based entirely on legal arguments:

> COURT: [Y]our moving on purely legal issues –
> MR. FJERMEDAL: Correct, yes.
> . . .
> COURT: [D]o you need to complete Tier Two discovery to make this motion? No.
> MR. FJERMEDAL: No.
> . . . .
> MR. FJERMEDAL: . . .I think maybe and the parties agree on, in this case is that it might make sense to stay that discovery while we tee up these two discreet legal motions [*i.e.*, the motion for summary judgment and motion for

---

[2] Each defendant was deposed in August 2016 about their net worths – and nothing more – as part of Tier I discovery. (Schlanger Decl. ¶¶ 36-38.) Defendants' counsel conceded that depositions as to the merits of the claims would need to occur when he agreed to schedule such depositions in January and February of 2017. (*Id.* ¶¶ 36-38, 40-45.)

class certification], because if we lose on summary judgment on legal grounds, why do we need to do all this discovery?

       THE COURT: No, I agree. Yes, right. . . .

(Schlanger Decl.  Ex. 1 (1/11/17 Tr.) at 15:5 – 16:10.)

In light of Defendants' counsel's representations, Plaintiff's counsel did not object to his requested discovery stay.  (Schlanger Decl., Ex. 1 at 15-16).

Upon review of Defendants' motion, the undersigned learned for the first time that Defendants seek to have the Court rule on – and to deem "undisputed" – critical factual issues that were to be the focus of the depositions that were preempted by the discovery stay.  (*Id.* ¶¶ 54-55.)  As a result, despite the fact that Defendants' arguments fail on legal grounds, Plaintiff's counsel, concurrent with submission of this brief, also submits a Rule 56(d) affidavit attesting to the necessity of more discovery before factual issues in this case are ripe for summary judgment.

## ARGUMENT

### I.   STANDARD OF REVIEW

"Summary judgment is proper only if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Faltynowicz v. Battery Park City Auth.*, 846 F.3d 58, 63 (2d Cir. 2017).

The FDCPA prohibits, among other things, the "use of any false representation or deceptive means to collect or attempt to collect any debt."  15 U.S.C. § 1692e(10).  Whether a debt collector's statement "is 'false, deceptive, or misleading' under the FDCPA is determined from the perspective of the objective 'least sophisticated consumer.'"  *Easterling v. Collecto, Inc.*, 692 F.3d 229, 233 (2d Cir. 2012).  This is "an objective standard" measured by "how the 'least sophisticated consumer' would interpret the notice received from the debt collector" rather than someone with the "astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, every day, common consumer."  *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir.

4

1996).  Consistent with the FDCPA's remedial purpose, the application of the least-sophisticated-consumer "ensure[s] that the FDCPA protects all customers, the gullible as well as the shrewd."  *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993).

"A communication is deceptive and, thus in violation of 15 U.S.C. § 1692e, 'when it can be reasonably read to have two or more different meanings, one of which is inaccurate.'" *Eun Joo Lee v. Forster & Garbus LLP*, 926 F. Supp. 2d 482, 486 (E.D.N.Y. 2013).

## II.   THE STATE COURT COLLECTION COMPLAINT FALSELY IDENTIFIED NCSLT AS THE "ORIGINAL CREDITOR"

"[U]nder the objective least sophisticated consumer standard, it is not necessary for a plaintiff to show that she herself was confused by the communication she received; it is sufficient for a plaintiff to demonstrate that the least sophisticated consumer would be confused." *Eun Joo Lee v. Forster & Garbus LLP*, 926 F. Supp. 2d at 487 (quoting *Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85, 91 (2d Cir. 2001)).

It is undisputed that Ms. Winslow obtained her student loan from BOA (Def. 56.1 No. 3) and that BOA was therefore the original creditor to whom Ms. Winslow owed money.  There can be little question that the least sophisticated consumer in her position would have understood the term "original creditor" as used by Defendants in the State Court Complaint to carry its ordinary meaning: the originator of the loan with whom Ms. Winslow previously transacted business.

Indeed, courts have routinely held that state court complaints mis-describing a debt buyer as an original creditor or otherwise providing a misleading description of the state court plaintiff's role and relationship to the debt violate the FDCPA.  *Thomas v. Portfolio Recovery Assocs. LLC*, 2013 U.S. Dist. LEXIS 113639, *14-16, 2013 WL 4517175 (S.D. Cal. Aug. 12, 2013) (false representation in state court complaint that debt buyer was the "original creditor" when, as here, Bank of America originated the debt, violated the FDCPA); *Heathman v.*

5

*Portfolio Recovery Assocs., LLC*, 2013 U.S. Dist. LEXIS 98742, *10 (S.D. Cal. July 13, 2013) (state court complaint that could plausibly be read to state that the original creditor was Chase Bank or debt buyer violated FDCPA); *Tourgeman v. Collins Fin. Servs.*, 755 F.3d 1109, 1120-1121 (9th Cir. Cal. June 25, 2014) (state court complaint misidentifying the original creditor violates FDCPA); *Gearing v. Check Brokerage Corp.*, 233 F.3d 469 (7th Cir. 2000) (complaint falsely describing assignee as subrogee violated FDCPA).

The FDCPA itself establishes the consumer's right to accurate identification of the original creditor, requiring that every initial written communication with a consumer inform the consumer of their right to be provided with "the name and address of the original creditor, if different from the current creditor." 15 U.S.C. § 1692g(a)(5). Courts interpreting this provision have universally understood "original creditor" to have its common meaning, consistent with Plaintiff's position in this litigation. *See, e.g.*, *Kuhne v. Cohen & Slamowitz, LLP*, 579 F.3d 189, 190 (2d Cir. 2009) (defining "original creditor" as the assignor of the loan rather than the debt-holding entity seeking to enforce the debt); *Tourgeman v. Collins Fin. Servs.*, 755 F.3d 1109, 1119 (9th Cir. 2014) (defining the consumer's "original creditor" as the bank that "originated his loan"). *See Vincent v. Money Store*, 736 F.3d 88, 107 (2d Cir. 2013) (distinguishing between the "original creditor" and a "subsequent assignee").[3]

To justify the obviously erroneous misidentification of the original creditor, Defendants aver (Mot. at 4) that an unsophisticated consumer in Ms. Winslow's shoes should have understood the term "original creditor" to mean "[t]he financial institution that owned the consumer credit account at the time the account was charged off," a definition Defendants' counsel located in a local rule that was *not yet enacted* when they initiated their state court action

---

[3] *See also* Federal Reserve Comment to 60 C.F.R. §16771 (providing a Truth and Lending Act exemption for "original creditors – to whom a written agreement was originally payable.")

against Ms. Winslow, and which applies not to collection complaints but rather to documents to be submitted in support of motions for default judgment.  Defendants' argument fails.

*First*, the provision cited by Defendants, 22 N.Y.C.R.R. § 202.27-a(2), did not take effect until October 2014.  State Court Complaint is dated May 22, 2014 and was filed on May 30, 2014.  (Dkt. No. 1-1 (Exhibit A to Plaintiff's Complaint), at 2, 4.)  Defendants cite no authority in effect at the time the State Court Complaint was served defining "original creditor" to mean anything other than the original entity to whom payment was owed.

*Second*, the definition of original creditor found in Section 202.27-a by its own terms, serves only to proscribe the entity tasked with submitting certain evidentiary filings before a default judgment may issue.  Specifically, the statute is titled "Proof of default judgement in consumer credit matters" and begins its definition section with "[f]or purposes of this section." *Id.* at 202.27-a(a).   As part of increasing the evidentiary burden that must be shown before a default judgment may be obtained in a consumer case, New York's Unified Court System placed the onus of providing the additional evidentiary materials on the last creditor to "charge off" the loan, rather than on the originator of the loan.  (*See* Schlanger Decl. Ex. 4.)

Tellingly, the default judgment rules' atypical definition of "original creditor" has not changed how New York's courts and debt collection attorneys use the term in the ordinary course.  *See, e.g.*, *Midland Funding LLC v. Austinnam*, 46 Misc. 3d 1207(A) (Mt. Vernon City Court Jan. 6, 2015) (assessing identity of original creditor); *cf. NCO Portfolio Mgt. v. Wilson*, 2014 N.Y. Misc. LEXIS 5649 (Buffalo City Ct. Dec. 10, 2014).

Courts have repeatedly held that misrepresentations as to the identity of the original creditor are material, meaning they are "capable of influencing a consumer's decision or ability to pay or challenge a debt." *Tourgeman,* 755 F.3d 1109, 1121 (9th Cir.) ("[I]n the context of debt collection, the identity of a consumer's original creditor is a critical piece of information,

7

and therefore its false identification in a dunning letter would be likely to mislead some consumers in a material way."); *Kaff v. Nationwide Credit, Inc.*, 2015 U.S. Dist. LEXIS 182048, at *17 (E.D.N.Y. Mar. 31, 2015); *Thomas*, 2013 U.S. Dist. LEXIS 113639, at *14-16; *Heathman*, 2013 U.S. Dist. LEXIS 98742, at *10 (same).

Indeed, the inclusion of a separate FDCPA requirement that debt collectors provide information regarding the identity and address of the original creditor (if different from the current creditor) upon request, and to inform the consumer of their right to this information, 15 U.S.C. § 1692g, demonstrates that Congress viewed the information is critically important, *inter alia*, because it helps consumers identify the account by reference to an entity with whom they had a prior interaction (the original creditor), and helps consumers determine whether the debt being pursued by the assignee was previously paid. *See Tourgeman*, 755 F.3d at 1119.

Moreover, standing to sue has become a critically important defense in consumer collection actions, as many New York state court collection action plaintiffs have proved unable to produce chains of title or otherwise prove up their standing. *See, e.g., Midland Funding LLC v. Austinnam*, 46 Misc. 3d 1207(A), 2015 N.Y. Misc. LEXIS 9, 2015 (N.Y. City Ct. 2015); *Palisades Collection, LLC v. Gonzalez*, 10 Misc. 3d 1058(A) (N.Y. Civ. Ct. 2005); *DNS Equity Group Inc. v. Lavallee*, 26 Misc. 3d 1228(A) (N.Y. Dist. Ct. 2010); Report on Legislation By The New York City Bar Consumer Affairs Committee And Civil Court Committee (Schlanger Decl. Ex. 5) at 2 ("[A] significant number of debt collection cases are filed by debt buyers, not original creditors. Debt buyer plaintiffs often possess little or no information regarding the underlying debt, the account holder, and the account's payment history, and any information they do have is often inaccurate."); National Consumer Law Center, Collection Actions:  Defending Consumers and Their Assets, 2.1.1 (same).

National Collegiate Student Loan Trust is no stranger to these problems as it has been bedeviled by rulings around the country dismissing its cases against purported student borrowers dismissed for precisely these reasons.  *See, e.g.*, *Nat'l Collegiate v. Grosik*, 2014 Ohio Misc. LEXIS 17104, *7 (Ohio C.P. Dec. 4, 2014) (finding NCLT's documentation unauthenticated, inadmissible and substantively deficient, and finding that "Collegiate does not have standing to sue Grosik on the instant note."); *Nat'l Collegiate Student Loan Trust 2006-2 v. Ramirez*, 2017 Tex. App. LEXIS 2030, *9 (Tex. App. Fort Worth Mar. 9, 2017) (upholding trial court finding that NCSLT failed to prove it was "the holder of the note"); *Nat'l Collegiate Student Loan Trust 2003-1 v. Beverly*, 2014 Ohio App. LEXIS 4258, *8 (Ohio Ct. App., Huron County Sept. 30, 2014) ("The documents submitted by [NCSLT], however, do not establish assignment of the loans to appellees.").[4]

A false statement that a state court collection action plaintiff is an original creditor is thus material because it is a false statement to both the consumer and the Court that none of these potential defenses can be expected to be available and may impact a hypothetical consumer's assessment the case, attractiveness of settlement and the price at which he would settle.

## III.  DEFENDANTS FALSELY STATED THAT NCSLT WAS AUTHORIZED TO BRING LAWSUITS IN NEW YORK

New York has long-required that foreign businesses and foreign business trusts "doing business" here file a certificate of designation before they are permitted to bring lawsuit in the

---

[4] *See also* *Nat'l Collegiate Student Loan Trust 2007-3 v. Smith*, 2015 Pa. Dist. & Cnty. Dec. LEXIS 10663, *2 (Pa. C.P. 2015) (dismissal for failure to prove standing); *Nat'l Collegiate Student Loan Trust 2006-2 v. McGuigan*, 2016 Pa. Dist. & Cnty. Dec. LEXIS 12038 (same); *Nat'l Collegiate Student Loan Trust 2005-2 v. Hair*, 2015 Ohio App. LEXIS 947 (Ohio Ct. App., Mahoning County Mar. 3, 2015)(reversing summary judgment in NCSLT's favor based on lack of standing); *Lovett v. Nat'l Collegiate Student Loan Trust 2004-1*, 149 So. 3d 735, 2014 Fla. App. LEXIS 17863, 39 Fla. L. Weekly D 2281 (Fla. Dist. Ct. App. 5th Dist. 2014) (same). Documents submitted by Defendant on this motion suggest Ms. Winslow's account has similar issues.  (Schlanger Decl. ¶¶ 79-82.)

state.  N.Y. Bus. Corp. Law § 1312 (addressing foreign corporations); N.Y. Gen. Ass'n Law § 18 (addressing foreign associations, including "business trusts"). These rules place foreign entities "on equal footing with [New York] corporations" by requiring them "to conform to registration and taxation requirements before taking advantage of the state's courts as a forum for its grievances." *Posadas de Mexico, S.A. de C.V. v. Dukes*, 757 F. Supp. 297, 300 (S.D.N.Y. 1991).

Defendants concede that NCLST is (i) a foreign business trust and that (ii) it failed to file a certificate of designation.  (Mot. at 5 & n.3.)  In light of these facts, Defendants' averment in the State Court Complaint that NCSLT is authorized to bring a lawsuit in New York was false and misleading.   Defendants nonetheless contend that their false and deceptive statements were not "material" or, alternatively, that NCSLT was not doing *enough* business in New York to require it to file a certificate of designation.  These arguments fail.

A. Defendants' Misrepresentation as to NCSLT's Capacity To Sue in New York Was Materially Deceptive

Defendants argue that their misrepresentation in the State Court Complaint as to NCSLT's authorization to commence the lawsuit against Ms. Winslow was immaterial.  (Mot. at 7.)  Nothing could be further from the truth.

Because NCSLT is a foreign business trust doing business in New York without having filed a designation certificate, any lawsuit it commences in New York is subject to dismissal. *Northway Exchange, Inc. v. Dufrane*, 258 A.D.2d 766, 768-69 (3d Dep't 1999) (trial court should have dismissed where the sole plaintiff had not filed a designation certificate); *Denmark Cheese Ass. v. Hazard Advertising Co.*, 59 Misc. 2d 182, 184 (N.Y. Cnty. S. Ct. 1969) (dismissing action for lack of certificate of designation).[5]  There can be little doubt that a

---

[5] To the extent Defendants suggest that the Second Circuit would not dismiss a case under these circumstances (Mot. at 10), the cited case, *Advanced Magnetics, Inc. v. Bayfront Partners*, 106 F.3d 11 (2d Cir. 1997), does not address this topic at all.  In any event, the relevant query is how

consumer defendant's decision "to pay or challenge the debt," *Kaff*, 2015 U.S. Dist. LEXIS 182048, at *17, will be affected by knowledge the case is subject to dismissal, even temporarily.

Defendants miss the mark by observing (Mot. at 9-10) that it may be possible for a debt collector to avoid dismissal if the designation certificate is promptly filed.  The inquiry here is not whether an action barred by Gen. Ass'n Law § 18 would definitely be dismissed, but instead whether the possibility of dismissal is "capable of influencing a consumer's decision."  *Kaff,* 2015 U.S. Dist. LEXIS 182048, at *17.  Obviously, it is, and Defendants' deception was therefore material.[6]

In short, falsely informing a consumer and the court that your client has authorization to proceed, when the client is in fact barred from commencing the lawsuit by operation of New York's General Ass'n Law, constitutes a material deception in violation of the FDCPA.  *See Grant-Hall v. Cavalry Portfolio Servs., LLC*, 856 F. Supp. 2d 929, 945 (N.D. Ill. 2012) (FDCPA violated where debt buyer filed suit "even though it lacked the documentation required by [state law] thus giving the 'false impression' that it had the 'legal status'" necessary to bring action.).

B.  Defendants' Deception Was Not a Mere Technicality

Defendants alternatively argue that their misrepresentation as to NCSLT's capacity to sue Ms. Winslow in New York Civil Court was a mere "state law" "technicality" that does not rise to the level of an FDCPA violation.  (Mot. at 6-7, 9-10.)  This argument fails.  Defendants lied to Ms. Winslow and the Kings County Civil Court about their client's compliance with a local law that in turn impacts their client's ability to commence a lawsuit in New York courts.  As

---

a state civil court presiding over a debt collection dispute might be expected to treat this issue, not a federal court.

[6] Moreover, it is undisputed that NCSLT has, for whatever reason, declined to cure the deficiency by filing a certificate of designation subsequent to the filing of the State Court Action. (Schlanger Decl. ¶¶ 70-71.), rendering Defendants discussion of "curability" irrelevant.

discussed above, the failure to obtain the certificate of designation subjects the suit to dismissal and knowledge of this fact could surely be expected to impact the hypothetical consumer's decision to settle or fight.  One case, *Moukengenschaie v. Eltman, Eltman & Cooper, P.C.*, cited by Defendants (Mot at 9), emphasizes this point: it rejected the "state law technicality" argument where the debt collector made misrepresentations that "may mislead the least sophisticated consumer."  2016 U.S. Dist. LEXIS 43725, at *47-48 (E.D.N.Y. Mar. 31, 2016).

The other cases cited by Defendants are distinguishable.  For example, *Gallego v. Northland Grp. Inc.* involved debt collector conduct that, while violative of the N.Y.C. Administrative Code, was not deceptive.  814 F.3d 123, 125-27 (2d Cir. 2016).  Here, in contrast, the FDCPA violation stems from false and deceptive statements by Defendants.

In short, where, as here, debt collectors make false statement to thousands of consumer, as well as Civil Court of New York, as to its client's capacity lawfully to pursue debt collection actions in the state, the misrepresentation is material and violates the FDCPA.

C.  <u>NCSLT Was Required To File a Certificate of Designation With the New York Secretary of State</u>

Defendants next argue that NCSLT was not doing enough business in New York to require it to file a designation certificate before being permitted to bring a lawsuit here.  (Mot. at 10-17.)  Defendants' argument is premature because Plaintiff has not had an opportunity to conduct relevant fact discovery.  Moreover, Defendants misrepresent the modest factual record that does exist and misconstrue applicable law.

1.  <u>A Factual Dispute Exists as to NCSLT's Business Activities in New York</u>

As a preliminary matter, summary judgment is inappropriate because there are no "undisputed" facts with respect NCSLT's business activities in New York.  As noted above,

Defendants filed this Motion – and sought a discovery stay – just weeks before the calendared

dates for depositions that would have addressed NCSLT's business activities in New York.

Moreover, Defendants' "evidence" as to NCSLT's business activities is submitted

through the testimonial affidavit of Bradley Luke (*see* Luke Decl. ¶¶ 27-29), a witness who was

not included in Defendants' initial disclosures.[7]  (Schlanger Decl. Ex. 2.)  Mr. Luke's affidavit is

not just a vehicle for introducing documents, but also for proffering otherwise unsupported

testimony on key, disputed issues.[8]  Because Mr. Luke was not listed in Defendants' Rule 26

disclosure, his testimony should be barred from consideration.  *Charles v. Cnty. of Nassau*, 116

F. Supp. 3d 107, 120-21 (E.D.N.Y. 2015) ("Under Rule 37 of the Federal Rules of Civil

Procedure, if a party fails to provide information or identify witnesses as required by Rule 26(a)

or (e), the party may not use that information or witness to supply evidence on a motion, at a

hearing, or at trial unless the failure was substantially justified or is harmless.")[9]; *Badolato v.

Long Island R.R.*, 2016 U.S. Dist. LEXIS 147713, at *11-13, 19-20 (E.D.N.Y. Oct. 24, 2016)

(precluding use of witness not included in Rule 26 disclosures).

---

[7] Indeed, no employees from Mr. Luke's company, TSI, or even the company itself, were disclosed to Plaintiff.  (*Id.*)

[8] *E.g.*, Luke Decl. ¶¶ 27 (testimony as to NCSLT's office locations conflicting with documentary evidence presented by Plaintiff (Schlanger Decl. Ex. 7 at 466)), 29 (testimony as to NCSLT's volume of lawsuits in New York that conflicts defense counsel's previous representations(Schlanger Decl. ¶¶ 27-33)).  Notably, both of these paragraphs from the Luke declaration lack any supporting documentation.

[9] "Substantial justification means justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request."  *Kunstler v. City of New York*, 242 F.R.D. 261, 264-65 (S.D.N.Y. 2007) (internal quotations and citations omitted). "Harmlessness means an absence of prejudice." *Ritchie Risk v. Coventry First LLC*, 280 F.R.D. 147, 159 (S.D.N.Y. 2012).  Here, no reasonable person could conclude that Defendants were not obligated to disclose Mr. Luke in their Rule 26 disclosures, as they now proffer his testimony as the sole evidence concerning dispositive facts.  Moreover, the prejudice is manifest, as Plaintiff has not had the opportunity to subpoena a critical witness concerning key facts.

13

Defendants themselves acknowledge that the inquiry into whether a foreign corporation is "doing business in New York" "is factual in nature" (Mot. at 12).  Because Defendants' factual assertions as to NCSLT's business activities in New York are based almost exclusively on the improper Luke testimony (*see* Mot. at 14-15) and because Plaintiff never had an opportunity to take discovery on these topics (Schlanger Decl. ¶¶ 40-45, 54-55), summary judgment is entirely improper at this time on the factual dispute concerning NCSLT's business activities in New York.

2. <u>The Complaint Adequately Pleads that NCSLT Does Business in New York Sufficient To Require It To Register</u>

Defendants next attack the complaint's *allegations* (Mot. at 14-15), effectively inserting a motion for judgment on the pleadings into their summary judgment motion.  *See Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001). When assessing a motion for judgment on the pleadings, "[a]ll factual allegations in the complaint must be accepted as true, and reasonable inferences must be drawn in favor of the plaintiff."  *N.Y. State Catholic Health Plan, Inc. v. Acad. O & P Assocs.*, 312 F.R.D. 278, 295 (E.D.N.Y. 2015)

Here, the Complaint alleges that (i) NCSLT maintains an office on Park Avenue in New York, (ii) NCSLT undertakes extensive debt collection efforts in New York, including taking pre-litigation action against *thousands* of consumers and bringing over 300 state court collection actions in New York courts in the three years prior to the commencement of this action [with Defendants' having stated in discovery that the true number is 2480 as discussed below], (iii) the Trust documents defining NCSLT's activities are virtually entirely focused on New York as the locus of their activities, (iv) its finance settlement takes place in New York, and (v) New York law governs aspects of their operation.  (Compl. ¶¶ 36(a)-(d).)  Based on the case law discussed below, these facts establish that NCSLT was doing business in New York and therefore disallowed from commencing civil actions here before filing certificate of designation.

14

For purposes of Gen. Ass'n Law § 18, to rebut the presumption that a foreign business or trust does business in its home state, rather than in New York, courts have required that the New York business activity be permanent, continuous, and regular.  *See, e.g.*, *Parkwood Furniture Co. v. OK Furniture Co.*, 429 N.Y.S.2d 240 (2d Dep't 1980); *Continental Shows, Inc. v. Essex County Agricultural Society, Inc.*, 404 N.Y.S.2d 418 (3d Dep't 1978).  To be doing business for purposes of Gen. Ass'n Law § 18, "the foreign corporation must do more than make a single contract, engage in an isolated piece of business, or an occasional undertaking; it must maintain and carry on business with some continuity of act and purpose."  *Int'l Fuel & Iron Corp. v. Donner Steel Corp.*, 242 N.Y. 224, 230 (1926).

Defendant argues that NCSLT "cannot be deemed to be 'doing business under GAL § 18 purely based on its maintenance of litigation in the state of New York."  (Mot. 16.)  Defendants are wrong on both the law and the facts.

As an initial matter, Defendants' arguments are based heavily on their assumption that case law analyzing the impact of a foreign corporation filing a large number of collection lawsuits on determining whether it is doing business under New York's Business Corporation Law applies to analysis of a foreign Trusts' filing of a large volume of collection lawsuits under the General Association Law's "doing business" provision.  Thus, Defendants point to cases such as *Carvalho v. Mel S. Harris & Assocs.*, 2004 U.S. Dist. LEXIS 12963, at *3-4 (E.D.N.Y. July 13, 2004), in which the Court held that a large number of New York lawsuits commenced by a foreign corporation, standing alone, was insufficient under N.Y. Bus. Corp. Law § 1312 to trigger the designation certificate requirement.

Defendants' analysis is incorrect.  While the "doing business" standard under the N.Y. Bus. Corp. Law and the Gen. Ass'n Law is generally the same, the statutes treat the bringing of lawsuits differently.  N.Y. Bus. Corp. Law § 1313 has an explicit provision allowing foreign

15

corporations to file lawsuits in this state as long as so long as they file a designation certification if they are "doing business" here. The Gen. Assn's. Law – which Defendants' concede applies in this case (Mot. 5 & n.3) – has no equivalent provision. Thus, the argument that filing of a large number of lawsuits should be considered as a type of doing business is stronger in the case of a business trust than a corporation.

In any event, several New York's courts have held that bringing a large volume of collection actions in New York is, standing alone, a sufficient quantum of business to require a foreign corporation to file a certification of designation even under the Gen. Corp. Law as well. *Centurion Capital Corp. v. Guarino*, 38 Misc. 3d 1216(A), 1216A (Civ. Ct. N.Y. Cnty. 2012); *Colonial Credit Corp v. Beyers*, 46 Misc. 3d 1221(A) (Civ. Ct. N.Y. Cnty. 2015). Other courts have set a higher bar, suggesting that in addition to debt collection activity, the foreign company must either own property, enter into contracts, or maintain personnel in New York (or some combination thereof) before it is deemed to be doing business here. *Carvalho*, 2004 U.S. Dist. LEXIS 12963, at *3-4.

The Court need not address the split in authority, however, because Plaintiff's complaint meets the higher standard, as it is alleges that NCSLT maintains an office on New York City, is organized under New York law, is composed significantly of New York debt, and enters into contracts (including buy and selling its securities) in New York. (Compl. ¶¶ 36(a)-(d)).[10]

Defendants' efforts to contest the complaint's allegations are not only procedurally

---

[10] Indeed, authority relied upon by Defendants recognizes that Sallie Mae would need to file a certificate of designation before being allowed to commence a lawsuit in New York if it were to be proven that Sallie Mae originates student loans in New York, "is actively involved with students attending New York schools" and brought over 800 lawsuits in New York in 2014 alone. *SLM Private Credit Student Loan Trust 2004-A v. Bonet*, 2015 N.Y. Misc. LEXIS 3486, at *10-14 (City Ct., Bronx Cnty. 2015) (cited at Mot. 11-13). In light of its analysis, and all of the other authorities on the subject, the *SLM* court's statement in dicta that a designation certificate is only required of the foreign company's business is "wholly" within New York, *id.* at *12, is mistaken.

16

improper but substantively meritless.  For example, Defendants contend that NCSLT's address is in Boston Massachusetts.  (Mot. at 14.)  That is not true.  A corporate constitutional document for NCSLT states that its "**principal place of business and principal office**" shall be "230 Park Avenue, New York, New York."  (Schlanger Decl. Ex. 7 at Bates 446).  Defendants simply ignore NCSLT's New York "principal place of business" and "principal office."

Further, the very NCSLT documents Defendants proffer state that "[t]he grantor trust will be a New York common law trust" and that "NFC Grantor Trust 2005-3 will be a newly formed New York common law trust" authorized to "engag[e] in any lawful acts or activity under New York law governing common law trusts."  (Luke Decl, Ex. K at "S-11.")  Further still, NCSLT's securities – the reason for a securitization trust's existence – were offered in New York on October 12, 2005 and "[e]ach of the offered securities . . . [was] governed by the laws of the State of New York."  (*Id*. at "S-68.")

Defendants next asserts that NCSLT only brings 100 to 110 lawsuits per year and that this number is insufficient to constitute doing business in New York.  In addition to being based on the Luke testimony that should be barred by Rule 37, Defendants' assertion that NCSLT files only 100 to 110 lawsuits per year directly contradicts the class size information provided by Defendants during now-closed Tier I discovery on this topic.  As Tier  discovery closed in October 2016 (Dkt. No. 40), the new discovery information inexplicably presented by Defendants upon filing of this Motion should not be considered.

Specifically, after being ordered by the Court to produce class size information at the initial conference held on August 6, 2015,[11] and continuously refusing to do so over an extended period of time, the parties – at a court conference held on March 1, 2016 to resolve various

---

[11] Specifically, the Court ordered at the initial conference on August 6, 2015 that "Defendants will produce documents indicating the number of collection lawsuits filed within the proposed class, filed in the State of New York during the relevant time period."  (Dkt. No. 12.)

discovery disputes – entered into a stipulated order, on the record, pursuant to which Defendant agreed to "provide federal and state subclass figures with regard to consumers who are class members under the proposed class definition." (Ex. 17, 3/1/16 Tr. at 3:20-22.)

Meeting its obligation under that stipulation, Defendants, by letter dated April 8, 2016, provided a "supplemental response to outstanding Tier I discovery as to . . . 'class size' pursuant to the stipulated order" in which Defendants stated that Trust 2005-1 contained 264 FDCPA class members and 842 GBL 349 class members; 2005-2 contained 214 FDCPA class members and 685 GBL class members, and 2005-3 contained 312 FDCPA class members and 953 GBL class members. (Schlanger Decl. Ex. 8.)[12]

Thus, by Defendants' own tabulation disclosed pursuant to Court order, F&G sued no fewer than 2,480 New York consumers on behalf of NCSLT over three years. Indeed, even if – as Defendants urge – only subsidiary trust 2005-3 is considered, the number is 953 over a three-year period, or approximately 320 per year, which is three times what is stated (without citation) in the Luke declaration (Luke Decl. ¶ 29). To the extent that NCLST files suits not falling within the class definition (e.g. using a firm other than F&G), the number would be higher. (*Id.*) All of this only underscores (a) the factual dispute precluding summary judgment and (b) Defendants' inexplicable failure to produce apparently relevant discovery before filing this motion.

In any event, there is no basis for isolating the one subsidiary trust that held Ms. Winslow's debt, National Collegiate Student Loan Trust 2005-3 (*see* Mot. at 2 n.2; *see also* Mot. at 14.) As pleaded in the Complaint and borne out by the limited discovery on this topic that has occurred, the three subsidiary trusts are part of one NCSLT structure: they took aggregated debts

---

[12] The class in this matter is a specific subset of defendants in state court litigation filed by NCSLT in New York. Specifically, it covers only: (i) Natural persons; (ii) who were sued by National Collegiate; (iii) in a New York state court consumer collection action; (iv) in an action in which F&G represented National Collegiate; (v) and in which the Compliant states that (a) "Plaintiff is authorized to proceed with this action" and/or (b) "Plaintiff is the original creditor."

from the same depositor, they have the same managing agent, the same advisor, the same trustees, and are operated jointly for the purpose of securitizing student loan debt, and governed by substantively identical documents (Pl. 56.1 Nos. 4-11p.)  Defendants' efforts to draw artificial distinctions between the subsidiary trusts within NCSLT – solely to minimize the volume of contacts with New York – should be rejected.

Finally, Defendants' argument ignores that NCSLT has thousands of New York accounts in which it is involved, in addition to actually commencing civil actions.  Specifically, NCSLT's trust document report some 10,404 New York student loan borrowers in NCSLT 2005 with a combined purported outstanding balance of 111.04 Million dollars.  (Schlanger Decl. ¶¶ 68-69.)

## IV.   THE COMPLAINT'S MEANINGFUL REVIEW ALLEGATIONS ARE SUFFICIENT

Defendants assert that the complaint's *allegations* that they did not engage in the FDCPA-mandated meaningful review when preparing the State Court Complaint "is unsupported by any evidence." (Mot. at 18.)  Two points jump out:  First, most of the purported evidence relied upon by Defendants' Affiant, Michael Leinhoff, was never produced by Defendants in its Tier II merits discovery document production.  (Schlanger Decl. ¶¶ 43-44.)  In particular, the Leinhoff affidavit relies extensively on Defendants' Collection logs for Ms. Winslow's account, and his affidavit is largely dedicated to interpreting those logs and arguing based on the log notes that meaningful attorney review occurred.  These logs have never been produced for Plaintiff's inspection.  (*Id*.)[13]  Nor have Plaintiff's even had the opportunity to depose Mr. Leinhoff, as Defendants obtained a discovery stay weeks before Plaintiff was set to take depositions from each defendant that would have addressed precisely this topic.  (*Id*. ¶¶ 40-45.)

---

[13] Mr. Leinhoff states in his declaration at paragraph 7 that the log indicates that a validation notice was sent to Ms. Winslow and that it was not returned.  Again, not only was this log not produced, but the purported validation notice was not produced during discovery, and is not even attached at this late date to Mr. Leinhoff's declaration.  (Schlanger Decl. ¶¶ 43-44).

19

What is clear is that the State Court Complaint is boilerplate, and Defendants have indicated that over 2,400 nearly identical complaints falsely identifying the original creditor and/or falsely asserting NCSLT's authorization to sue were served on others similarly situated. (Schlanger Decl. Ex. 8.)  This course of conduct – sending out thousands of false and deceptive complaints to consumers without successfully verifying key details – at least gives rise to a fair inference that Defendants were not meaningfully reviewing the pleadings.  *Diaz v. Portfolio Recovery Assocs., LLC*, 2012 U.S. Dist. LEXIS 72724, 15-16 (E.D.N.Y. May 23, 2012); *see also Miller v. Upton*, 687 F. Supp. 2d 86, 101 (E.D.N.Y. 2009).

Having withheld the pertinent documents and then obtained a stay to evade deposition on the topic, Defendants' motion for summary judgment on the basis of "lack of evidence" must fail.

## V.   PLAINTIFF'S GBL CLAIM SHOULD NOT BE DISMISSED

Defendants' conduct also violated GBL § 349's prohibition on deceptive business practices.  A *prima facie* violation of GBL § 349 is established upon proof that a defendant engaged in (i) a consumer-oriented act or practice that (ii) was deceptive or misleading in a material way and (iii) that the plaintiff was injured by reason thereof.  *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (N.Y. 1995).

### A.   GBL § 601 Does Not Bar Plaintiff's Claim

Defendants mistakenly contend (Mot. at 18-19) that Plaintiff's GBL § 349 claim is barred by operation of GBL § 601, citing *Conboy v. A&T Corp.*, 241 F.3d 242 (2d Cir. 2001).  The *Conboy* court addressed a situation in which a plaintiff alleging a GBL § 349 violation failed to allege *any* materially deceptive conduct.  *Id.* at 257.  Rather, in *Conboy*, the plaintiff alleged that GBL § 349 was necessarily violated because the non-deceptive conduct happened to violate another provision of the GBL, Section 601, which does not supply a private cause of action.  *Id.* at 257-59.  As numerous courts have held, "*Conboy* simply stands for the proposition that a §

20

601 claim is not necessarily a § 349 violation." *Samms v. Abrams, Fensterman, Fensterman,*
*Eisman, Formato, Ferrara & Wolf, LLP*, 163 F. Supp. 3d 109, 117 (S.D.N.Y. 2016); *Scott v. E.*
*Hope Greenberg*, 2017 U.S. Dist. LEXIS 50822, at *49 (E.D.N.Y. Mar. 31, 2017) (same).

Simply put, "[t]here is no basis for [the] argument that § 601 bars overlapping § 349
claims." *Samms*, 163 F. Supp. 3d at 117; *M.V.B. Collision, Inc. v. Allstate Ins. Co.*, 728 F. Supp.
2d 205, 219 (E.D.N.Y. 2010) (same). To the extent one court's opinion may suggest *Conboy*
holds anything more, *see Gomez v. Resurgent Capital Servs., LP*, 129 F. Supp. 3d 147, 158-59
(S.D.N.Y. 2015), Plaintiff respectfully submits that that court was mistaken. *See Martinez v.*
*LVNV Funding LLC*, 2016 U.S. Dist. LEXIS 136613, at *7 (E.D.N.Y. Sept. 30, 2016)
(considering and rejecting the application of *Gomez* urged by Defendants).

B. Plaintiff Has Standing To Pursue a GBL Claim

Defendants assert, without citing any supporting authority, that Ms. Winslow lacks
standing because she is not "a consumer of a product or service provided by the [*sic*] defendant."
(Mot. at 22.) Contrary to Defendants' unsupported contention, GBL § 349 contains no such
"requirement."[14] *See Oswego*, 85 N.Y.2d at 25.

Defendants also assert that Plaintiff cannot prove injury. (Mot. at 22.) But the New York
Court of Appeals has instructed that injury for purposes of GBL § 349 need not be pecuniary.
*Oswego*, 85 N.Y.2d at 26. Here, Defendants' conduct impaired Ms. Winslow's right not to be
subjected to a lawsuit commenced by an unregistered foreign trust.

Defendants' reliance on *Toohey v. Portgolio Recovery Assocs., LLC*, 2016 U.S. Dist.
LEXIS 111534 (S.D.N.Y. 2016) is misplaced. In *Toohey*, the Court concluded that a plaintiff

---

[14] By contrast, the FDCPA does require that a plaintiff meet the statutory definition of
"consumer," which the FDCPA defines as a "natural person obligated or allegedly obligated to
pay any debt." 15 U.S.C. § 1692a(3). Defendants do not argue here that Ms. Winslow falls
outside of this definition.

was not injured when her wages were garnished to satisfy a default judgment arising out of a

debt she owed. *Id*. at *29-32. Here, by contrast, Ms. Winslow and the class' injuries – including

non-pecuniary injuries – arise out of being subjected to a lawsuit that *was unlawfully commenced*

*in the first place*. *Toohey* is inapposite.

Next, Defendants argue that their misconduct was not sufficiently "consumer-oriented" to

be covered by GBL § 349. (Mot. at 21.) They are mistaken. "Consumer-oriented conduct" for

purposes of GBL § 349 "does not require repetition or pattern of deceptive behavior" or

"recurring conduct." *Oswego*, 85 N.Y.2d at 26. A plaintiff need only prove that the misconduct

was not a "single shot" transaction. *See Genesco Entertainment v. Koch*, 593 F. Supp. 743, 752

(S.D.N.Y. 1984); *Aghaeepour v. N. Leasing Sys.*, 2015 U.S. Dist. LEXIS 161018, at *43

(S.D.N.Y. Dec. 1, 2015) ("In New York, the requirement that defendants engage in consumer-

oriented conduct has been construed liberally."). Here, Defendants admitted in discovery to

having filed and served *thousands* of complaints containing the language at issue (Schlanger

Decl., **Ex. 8** at 2), which is clearly more than enough to meet this standard. Further, GBL § 349

has routinely been employed to obtain redress for victims of deceptive statements made in

connection with the collection of a debt. *See e.g.*, *Campbell v. MBI Assocs., Inc.*, 98 F. Supp. 3d

568, 587 (E.D.N.Y. 2015); *Aghaeepour*, 2015 U.S. Dist. LEXIS 161018, at *45; *Ellis v. Cohen*

*& Slamowitz, LLP*, 701 F. Supp. 2d 215, 223 (N.D.N.Y. 2010).

## VI.    THE FDCPA CLAIM IS NOT BARRED BY ABSTENTION DOCTRINE

Relying upon *Colorado River Conservation Dist. v. United States*, 424 U.S. 800 (1976),

Defendants argue that the abstention doctrine requires dismissal of the FDCPA claim. They are

incorrect. *Colorado River* provides that in "exceptional circumstances," a federal court may

abstain from exercising jurisdiction when parallel state court litigation could result in

"comprehensive disposition of litigation and abstention would conserve judicial resources," *id.* at 813, 817-18.

The Second Circuit instructs that "abstention is generally disfavored" because federal courts have a "virtually unflagging obligation" to exercise their jurisdiction. *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012). "The abstention doctrine comprises a few extraordinary and narrow exceptions to a federal court's duty to exercise its jurisdiction," and "[i]n this analysis, the balance is heavily weighted in favor of the exercise of jurisdiction." *Id.*

As an initial matter, "a finding that the concurrent proceedings are 'parallel' is a necessary prerequisite to abstention under *Colorado River*." *Dittmer v. Cty. of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998). Suits are parallel when "substantially the same parties are contemporaneously litigating substantially the same issue in another forum." *Niagara Mohawk Power Corp.*, 673 F.3d at 100.

Such parallelism does not exist here. *First*, the federal and state actions seek entirely different relief. The state court action seeks collection on a debt and the federal action seeks compensation for unlawful collection conduct; resolution of one case does not necessarily affect the outcome of the other. *Second*, the actions apply different bodies of law. This federal action seeks redress pursuant to the FDCPA and the GBL for Defendants' deceptive practices. It is not affected by whether or not Ms. Winslow actually owes a debt; nor is the debt collection case affected by whether Defendants are liable for deception. *Third*, the two actions do not have substantially the same parties as F&G and its principles are not parties to the state court action and NCSLT is not a party to the federal action.[15]

---

[15] And even if the action were parallel, which they are not, the Court would be required to assess six factors which weigh against applying the "exceptional" abstention doctrine. *Id.* at 100-101

23

For these reasons, district courts, routinely reject efforts to have FDCPA claims dismissed on *Colorado River* grounds.  *See e.g.*, *Fritz v. Resurgent Capital Servs., LP*, 955 F. Supp. 2d 163, 175 (E.D.N.Y. 2013); *Dazza v. Kirschenbaum, Pillips & Levy, P.C.*, 2017 U.S. Dist. LEXIS 54199, at \*13-16 (D. Md. Apr. 10, 2017).

## VII.    THE CLAIMS AGAINST INDIVIDUAL DEFENDANTS SHOULD NOT BE DISMISSED

For their final sally, Defendants urge the Court to dismiss the claims against the individual defendants before any relevant discovery has been conducted.  Yet while Defendants' decry supposedly "conclusory allegations" against Messrs. Forster and Garbus (Mot. at 25), Defendants' simultaneously concede Mr. Garbus' direct involvement in the FDCPA and GBL violations.  (Leinoff Decl. ¶ 11.)  In any event, as with Plaintiff's meaningful review claim (*see* Section IV *supra*), summary judgment is improper, among other reasons, because the discovery stay sought by Defendants cut off Plaintiff's ability to depose Messrs. Forster and Garbus on these topics before the instant Motion was filed.

Defendants entirely ignore the relevant FDCPA respondeat-superior case law, which holds that career debt collectors such as defendants Forster and Garbus are directly and vicariously liable for the FDCPA violations in the State Court Complaint.  *Polanco v. NCO Portfolio Mgmt*, 132 F. Supp. 3d 567, 584 (S.D.N.Y. 2015) ("[P]rincipals or corporate parents may be held vicariously liable for their agents' or subsidiaries' actions that violated the FDCPA where the principals are themselves 'debt collectors.'").  As the Third Circuit has explained,

---

(stating factors to consider).  For example, Defendants are all located in the Eastern District of New York; this is a thus convenient forum for them.  Dismissal of the federal action would not result avoid "piecemeal litigation".  Indeed, the state court action has seen no activity by either party since September 2014, there are no motions pending in that action, and no judge assigned to it.  It has lain entirely dormant.  Nor is this an action involving "res" over which another court has already opted to exercise jurisdiction.

vicarious liability is necessary because debt collectors subject to the FDCPA – such as Messrs. Forster and Garbus – "bear the burden of monitoring the activities of those it enlists to collect debts on its behalf." *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 404 (3d Cir. 2000). Indeed, even authority cited by Defendants holds that "debt collectors . . . are vicariously liable for FDCPA violations committed by agents acting on their behalf, *whether or not they exercised direct control over them.*" *Gomez*, 129 F. Supp. 3d at 156 (emphasis added) (collecting cases and examining legislative history of FDCPA) (cited at Mot. at 19).[16]

Notably, the affidavit submitted by Defendants on this Motion admits that Mr. Garbus was directly involved with reviewing and the Winslow file and approving the lawsuit.  (Leinoff Decl. ¶ 11.)   This admission renders frivolous Defendants' contention in the Motion that the complaint's allegations as to the individual defendants are "conclusory" (Mot. At 25); far from "conclusory," they are conceded.  Moreover, there is every reason to believe that the complaint's well-pleaded allegations concerning Mr. Forster's responsibility will also be born out if discovery is allowed to proceed.

In short, Messrs. Forster's and Garbus' liability does not require "veil piercing," as they erroneously contend (Mot. at 24-25),[17] but instead rests their position as debt collectors and their role supervising the FDCPA violation.  *See* 15 U.S.C. § 1692a(6) (FDCPA liability applies to "any person" who "regularly collects or attempts to collect . . . debts owed . . . or due another.").

---

[16] Defendants' argument with regard to F&G's principals is also contrary to N.Y. Bus. Corp. Law § 1505, which provides that "[e]ach shareholder, employee or agent of a professional service corporation . . . shall be personally and fully liable and accountable for any negligent or wrongful act misconduct committed . . . by any person under his direct supervision and control while rendering professional services on behalf of such corporation."

[17] The case chiefly relied upon by Defendants, *Allison v. Whitman & Meyers, LLC*, 2015 U.S. Dist. LEXIS 24050 (W.D.N.Y. 2015) (cited at Mot. at 24-25), is inapposite because in that case, there were not sufficient allegations that the individual defendant was a debt collector, *id.* at *5-6, whereas in this case Defendants concede Defendant Garbus' direct involvement in the Winslow debt collection matter (Leinoff Decl. ¶ 11) and do not deny that Mr. Forster, too, is a career debt collector.

## CONCLUSION

For all of the reasons set forth above, Defendants' motion should be denied in its entirety.

Dated:  April 21, 2017

Respectfully Submitted,

*/s/ Daniel A. Schlanger*
Daniel A. Schlanger
Benjamin A. Silverman
Kakalec & Schlanger, LLP
85 Broad Street, 18th Floor
New York NY 10004
T. 212-500-6114
F. 646-612-7996
dschlanger@kakalec-schlanger.com
bsilverman@kakalec-schlanger.com

*Attorneys for Plaintiffs*