UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
BARBARA WINSLOW, on behalf of herself
and all others similarly situated,

                                      Plaintiff,                MEMORANDUM AND
                                                     ORDER
                                                     CV 15-2996 (AYS)

          -against-

FORSTER & GARBUS, LLP, RONALD
FORSTER, Esq. and MARK GARBUS, Esq.,

                                       Defendants.
-------------------------------------------------------------------X

**ANNE Y. SHIELDS, United States Magistrate Judge:**

      This is an action commenced by Plaintiff Barbara Winslow ("Plaintiff" or "Winslow"),

pursuant to the Fair Debt Collection Practices Act, 15 U.S.C.1692 et seq. (the "FDCPA") and

Section 349 of the New York State General Business Law ("Section 349"). Plaintiff styles this

action as a class action brought on behalf of herself, and others similarly situated against

Defendants Forster & Garbus, LLP ("F&G"), Ronald Forster, Esq. ("Forster"), and Mark

Garbus, Esq. ("Garbus") ("Foster" and "Garbus" collectively the "Individual Defendants"). <u>See</u>

Complaint ("Compl."), Docket Entry ("DE") 1. Presently before the Court are Defendants'

motion for summary judgment, and Plaintiff's motion to certify this matter as a class action.

Background

I.     <u>Documents Submitted Regarding the Dispositive Motions</u>

      In support of their motion for summary judgment, Defendants submit a memorandum of

law ("Def. Mem. in Supp. of SJ"), DE 60, Exhibit ("Ex.") 1; a statement pursuant to Rule 56.1 of

the Local Rules of this Court ("Def. Rule 56.1"); and the declarations of Bradley Luke ("Luke

1

Declaration"), Docket Entry ("DE") 60, Ex. 3; and Michael Leinoff ("Leinoff Declaration"), Ex.

15. Attached to the Luke Declaration are the following exhibits:

- Confirmation of Transworld Systems Inc. ("TSI"), as a Subservicer of student loans for National Collegiate Student Loan Trust ("NCSLT") 2005-3[1],
- Executed Promissory Note from Bank of America ("BOA"),
- Truth-in-Lending Disclosure Statement,
- Loan Financial Activity,
- Deferment/Forbearance Summary,
- Repayment Schedule,
- Loan Payment History Report,
- Pool Supplement – Bank of America ("BOA"),
- The Deposit and Sale Agreement, dated October 12, 2005,
- Forster & Garbus printout regarding Barbara Winslow/National Collegiate Trust
- National Collegiate Student Loan Trust 2005-3 Shareholder Information.

See DE 60-4-14, Luke Exs. A-K.

Attached to the declaration of Leinoff Declaration, DE 60, Ex. 15, are the following exhibits:

- F&G F-9 Collection Notes,
- F&G F-10 Collection Notes,
- Promissory Note from BOA,
- Truth-in-Lending Disclosure Statement,
- Loan Financial Activity,
- Deferment/Forbearance Summary,
- Repayment Schedule,
- Loan Payment History (Ex. H),
- Email from Forster & Garbus to Barbara Winslow,
- Notice of Lawsuit,
- Affidavit of Service,
- Attorney Verification,
- Email from Forster & Garbus to Mr. Lane.

See DE 60-16-28, Leinoff Exs. A-M.

---

[1] NCSLT 2005-3 is a National Collegiate Student Loan Trust, which is an entity that owns a bundle of securitized student loan debt. Student loan debt is typically temporarily deposited with an entity which then bundles and securitizes it into trusts. NCSLT 2005-3 is the particular trust that is alleged to own the student load debt incurred by Plaintiff Winslow. The Luke Declaration states that TSI services loans within the NCSLT 2005-3 trust.

In opposition to the summary judgment motion, Winslow submits a memorandum of law ("Pl. Mem. in Opp. of SJ"), DE 65; her statement pursuant to Rule 56.1 of the Local Rules of this Court ("Pl. Rule 56.1 Resp."), DE 65, Ex. 1; and the declaration of Plaintiff's attorney, Daniel Shlanger ("Shlanger Declaration"), DE 65, Ex. 2.  The Schlanger Declaration is submitted pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, and attests to the need for additional discovery before factual issues in this case are ripe for summary judgment. Annexed thereto are the following exhibits:

- Transcript of pre-motion conference,
- Defendants' Rule 26 disclosures,
- Third party subpoenas,
- Proposed reforms relating to consumer credit collection cases,
- City of New York Bar's Report on related legislation,
- Order of the Chief Administrative Judge of the Courts of New York concerning amendment to rules for obtaining default judgments in consumer class actions,
- Trust Agreement among Delaware Trust Company, National Association,
- Letter dated April 8, 2016 from Defendants' counsel,
- Website search results for "what is an original creditor" (Exs. 9-12),
- Prospectus supplements for NCSLT (Exs. 13-15),
- Court's Civil Conference Minute Order regarding the initial conference held in this matter on August 6, 2015,
- Transcript from the March 1, 2016 conference before the Court, and
- Plaintiff's document requests.

See DE 65-3, containing Shlanger Decl. Exs. 1-7.

In further support of their motion for summary judgment, DE 61, Defendants submit a response to Plaintiff's Counter-Statement of Undisputed Material Facts. DE 61, Ex. 1.

The facts set forth below are drawn from the documents submitted, and are undisputed except as noted.

II.      The Parties and Their Prior Dealings

A.      Winslow's Loan

On or about August 11, 2004, Winslow executed a certain Bank of America Guaranteed Access to Education ("GATE") Education Promissory Note in connection with a $10,000 student loan (the "Loan"). Pl. Rule 56.1 Resp., DE 65, Ex. 1 ¶ 3. On or about September 28, 2004, the principal amount of $10,000.00 was disbursed to Plaintiff. Id. ¶ 6. While, as stated below, the precise payment history with respect to the Loan is not a matter that is ripe for summary judgment, F&G's attempt to litigate with respect to the Loan is clear, and is set forth below.

B.      The State Court Action

On May 30, 2014, F&G filed a lawsuit against Winslow in the Civil Court of the City of New York, County of Kings (Index No. 31934-2014) (the "State Court Action"). DE 60-25. The State Court Action was filed on behalf of F&G's client, which is stated on the face of the complaint in the State Court Action to be "National Collegiate Student Loan Trust 2005-3, a Delaware Statutory Trust" (the "Trust"). The State Court Action sought a judgment in the amount of $11,369.67, and named only the Trust as plaintiff.

The factual recitations in support of the complaint in the State Court Action state, inter alia, that the Trust is "the original creditor and is not required to be licensed" by the New York City Department of Consumer Affairs, that the Trust is "authorized" to proceed with the action, and that Winslow borrowed money from "Plaintiff or Plaintiff's assignor." DE 60-25. That complaint makes no mention of Bank of America – the entity that originally extended the Loan to Winslow. DE 60-25; and DE 1, Ex. A. It is not disputed that at the time of the filing of the State Court Action, the Trust had not filed a certificate with the New York State Department of State designating the Secretary of State of the State of New York as an agent for service of

process pursuant to Section 18(2) of the New York State General Associations Law.[2] Def. Counter 56.1 Resp. ¶ 1, DE 61, Ex. 1.

Winslow was personally served with the State Court Action at her Brooklyn address on June 14, 2014. Pl. Rule 56.1 Resp. ¶ 35, DE 65, Ex. 1. She interposed an answer through counsel on August 18, 2014. Id. ¶ 36. On September 16, 2014, F&G sent counsel for Winslow documents related to the Loan. Id. ¶ 37.

 C. Disputed Facts

The above mentioned facts are not in dispute. What is in dispute are the circumstances through which the Trust acquired the ability to collect on the Loan, as well as the particular facts as to what occurred with respect to re-payment of the Loan from the time it was disbursed by Bank of America, until the time Plaintiff was served with the complaint in the State Court Action. Defendants attempt to establish facts in connection with these events through the declarations and documents annexed to their summary judgment motion papers.

The documents Defendants rely upon (which have not been previously shared with Plaintiff in discovery), reference the transfer, sale and assignment of the Loan debt, and its securitization and incorporation into a trust formed for the purpose of holding similar student loan debt. Pl. Rule 56.1 Resp. ¶ 7-13. Defendants' documents also purport to establish Winslow's payment history, a now-expired grant of collection forbearance, id. ¶¶ 14-15, the fact that Winslow's loan was "charged off" by the Trust, and that Trust's sub-servicer TSI thereafter retained F&G to collect on the Loan debt contained within the Trust. Id. ¶ 17.

---

[2] Defendants concede, for purposes of this motion that NCSLT 2005-3 meets the statutory definition of a "business trust" that is an "association" within the meaning of Section 18 of the New York State General Associations Law. Def. Memo of Law at 5 n. 3.

Defendants' documents also attempt to establish the precise steps taken by Defendants with respect to F&G's attempt to contact Winslow and collect payments alleged to be due with respect to the Loan. Thus, the documents refer to the sending of a debt validation notice and a telephone call during which Winslow is stated to have acknowledged receipt of certain documents. Defendants' submission goes on to detail its version of the 2014 activity of the F&G compliance department, and the sending of information that "was not returned as undeliverable." Id. ¶¶ 25-35. In addition, Defendants' submission details alleged facts regarding the amount of business that the Trust conducts in New York State.

Winslow disputes Defendants' version of all facts, predominantly because discovery has not yet been conducted as to the facts that Defendants' declarations and documents purport to establish. In addition to questioning facts establishing the transfer of the Loan, Winslow challenges facts alleged with respect to the extent of Trusts' business dealings in New York, as well as those purporting to document F&G's review of activity with respect to the Loan. See Pl. Rule 56.1 Resp.

III.     Plaintiff's Complaint

A.     The Claims

As noted, this lawsuit is a putative class action in which Plaintiff alleges federal and state causes of action against Defendants. The federal claims are alleged pursuant to the FDCPA, and the state claim alleges liability for the same facts pursuant to Section 349. In particular, Plaintiff alleges that Defendants engaged in unlawful conduct by falsely stating in the State Court Action: (1) that the Trust was the "original creditor" of Winslow's student loan and (2) that the Trust was "authorized to proceed" with the State Court Action. Both the statements as to the Trust's "original creditor" and its "authorized to proceed" status are alleged to have violated 15 USC §§

1692e, 1692e(2)(A), 1692e(5), 1692e(9) and 1692(e)(10); 15 USC § 1692f and § 1692f(1) and Section 349.

As to the former claim, it is asserted that Bank of America is, in fact, Plaintiff's original creditor and the Trust is, "at best, a purported assignee pursuant to a complex, securitized Trust in which student loans held by [the Trust] must first pass through a complicated web of entities, making the chain of title and [the Trust's] standing a critical issue in any state court collection action." Compl. DE 1 at ¶ 30. The original creditor statement is alleged to hide this complex structure, and to thereby avoid consumer inquiry into issues of proper assignment and standing, as well as the correct identification of the actual creditor and servicer of the Loan. Id. at ¶ 31.

As to the claim based upon the alleged misstatement regarding the Trust's authorization to do business in New York, Plaintiff alleges that the Trust is prohibited by statute from maintaining a lawsuit in New York because it has not properly registered as a foreign entity doing business in New York as required by Section 18 of the New York State General Associations Law.

Plaintiff's complaint also claims that the complaint in the State Court Action was deceptive and misleading under the FDCPA and state law because it was signed, but not meaningfully reviewed, by an attorney in violation of §§1692e, 1692e(3), 1692e(5), 1692e(l0), and 1692f and Section 349. With regard to this claim, Plaintiff alleges that Defendants' "business plan" is "driven by the profitability of filing boilerplate complaints against consumers who either default, or attempt to proceed pro se and cannot, as a practical matter challenge the deceptive, boilerplate consumer collection pleadings." Id. at ¶ 39.

Defendants' statements forming the basis of the complaint herein are alleged to meet the FDCPA standard for liability because they influence the least sophisticated consumer's ability to

challenge a debt, and are stated to be material because they might "reasonably prompt" a

defendant/consumer to "settle rather than litigate, or to settle on less favorable terms than he or

she would otherwise accept." Id. ¶ 40. These statements are also alleged to meet the state law

standard for determining liability under Section 349.

Finally, Plaintiff's complaint includes particular class-based allegations which are

discussed below in connection with this Court's disposition of the motion to certify a class.

IV. Procedural History

A. Initial Proceedings Before This Court

Plaintiff filed this lawsuit on May 22, 2015. DE 1. On July 8, 2015, Defendants filed their

answer. DE 11. The next day, this Court scheduled an initial conference for August 11, 2015.

See Order dated July 9, 2015. Defendant requested, and was granted, an adjournment of the

initial conference. DE 13. On August 6, 2015, this Court held an initial conference, at which time

a discovery schedule was entered. DE 15. The Court also directed the parties to file a joint status

letter. On October 26, 2015 the joint status report was filed, and the next day this Court

scheduled a status conference for November 16, 2015. See DE 20; Notice of Hearing dated

October 27, 2015. During the November 16, 2015 status conference, counsel were directed to

produce specific documents, and to further submit a joint status letter to this Court on December

18, 2015. DE 21. The parties requested, and were granted, two extensions of time for the

submission of their joint status report. DE 22, 23. On January 5, 2016, they submitted a status

report, which indicated that they had discovery disputes. DE 24. On January 7, 2016, this Court

issued an order directing counsel to appear at a status conference on January 26, 2016. The

conference was adjourned to March 1, 2016, at which time it was held, and parties entered into

an agreement regarding their discovery disputes. <u>See</u> Minute Order dated March 1, 2016. A further status letter was directed to be submitted on April 4, 2016.

On June 22, 2016, after receiving status letters from counsel, this Court held a telephone conference. During that conference, Plaintiff was directed to conduct depositions pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure depositions, and Defendants were directed to produce witnesses with knowledge of documents, Defendants' financial net worth, and the relationship between certain Defendant entities. Counsel were further directed to submit a joint status letter by July 22, 2016. DE 36. On August 15, 2016, after being granted an extension of time to submit such letter, the parties filed their status letter and requested that discovery be extended. DE 39. The request was granted, and a new discovery schedule was entered, which extended the conclusion of all discovery to May 15, 2017. <u>See</u> Order dated August 19, 2016.

On October 5, 2016, counsel submitted a joint status letter, which stated that there were disputes regarding (1) whether discovery should be extended to allow Defendants additional time in which to appraisal its property (presumably in connection with the issue of a net worth determination), and (2) the date when Plaintiff would move for class certification. DE 42. On October 31, 2016, this Court held a status conference regarding the discovery disputes. DE 44. During that conference, the Court directed Plaintiff to seek a pre-motion conference with the District Court regarding class certification, and advised Defendants to submit a letter to the District Court regarding any dispositive motions that it seeks to make. DE 44. The parties complied with this Court's directives and submitted requests for pre-motion conferences to the District Court.

      B.      <u>The Pre-motion Conference, Stay of Discovery and Briefing of the Motions</u>

On January 11, 2017, the District Court held a pre-motion conference, at which time the Court stayed Tier 2 discovery and directed parties to submit fully briefed motions by April 21, 2017. DE 50. On that same day, the parties filed a consent to this Court's jurisdiction, and the case was referred to this Court for all purposes. DE 51. On March 21, April 4, and May 2, 2017, counsel requested, and were granted, one week extensions to the briefing schedule set by the District Court. DE 55, 56, 59. On May 12, 2017 Plaintiff filed her motion for class certification, and Defendants filed their motion for summary judgment. DE 60, 66.

C.      Post-Briefing Submissions

On July 23, 2017, Plaintiff filed a notice of supplemental authority, containing a Bronx County Civil Court decision, which she states had only recently been discovered, which concluded that NCSLT had failed to demonstrate that it had taken assignment of and owned a student loan it sought to collect. DE 69. Winslow sought to supplement her opposition to Defendants' motion for summary judgment, to further support its argument that NCSLT "has been bedeviled by rulings around the country dismissing its cases against purported student borrowers" for failure to prove up its standing as an assignee. See Pl. Opp. at 9. On July 27, 2017, Defendants objected on the ground that the authority cited by Plaintiff is irrelevant to this lawsuit, and that Plaintiff's counsel failed to consult with Defendants prior to filing the notice of supplemental authority. DE 70. On September 28, 2017, Plaintiff filed an additional notice of supplemental authority. Attached to that notice, are consent judgments between National Collegiate Student Loan Trusts and the Financial Protection Bureau. Winslow makes clear that the consent orders do not moot and are not dispositive of her claims, but asserts they are nevertheless relevant to this matter because misconduct that is the subject of those orders involves misrepresentations as to NCSLT's standing. DE 71. Defendants again object to this

Court's consideration of the proposed supplemental authority on the grounds that it is irrelevant and misleading.

### D. This Court Declines to Consider the Supplemental Authority

Upon review, this Court agrees with Defendants' position that neither supplement authority submitted by Plaintiff is relevant to the presently pending motions. Therefore, the Court will not consider that authority and will proceed to consider the merits of this matter based upon the earlier submissions of the parties. As both motions are now fully briefed and ripe for decision, the Court turns to the disposition thereof.

## DISCUSSION

### I. Threshold Issues as to the Motions

#### A. Consideration of Dispositive Motion Prior to Class Certification Motion

Courts in this district have recognized "'that a decision on the merits may hold implications for class members' claims and influence the ultimate composition of the class. However, '[t]here is nothing in Rule 23 to preclude the Court from examining the merits of plaintiffs' claims on a proper ... Rule 56 motion simply because such a motion is returnable contemporaneously with a class motion.'" Vu v. Diversified Collection Servs., Inc., 293 F.R.D. 343, 351 (E.D.N.Y. 2013) (quoting Adames v. Mitsubishi Bank, Ltd., 133 F.R.D. 82, 87 n. 1 (E.D.N.Y. 1989)).

Although consideration of the merits may be necessary where a merits analysis is factually or legally interwoven with a determination as to Rule 23's requirements, Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349-51, 131 S. Ct. 2541, 2551 (2011) (citing General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 160, 102 S. Ct. 2364 (1982)), there is no requirement that a motion for class certification must be decided prior to a cross motion for

summary judgment. <u>Schweizer v. Trans Union Corp.</u>, 136 F.3d 233, 239 (2d Cir. 1998) (citations omitted); <u>Kurtz v. Kimberly-Clark Corp.</u>, 2017 WL 1155398, at *18 (E.D.N.Y. 2017) (collecting cases). "The rules merely provide that a decision on class certification must be made '[a]t an early practicable time.' Fed. R. Civ. P. 23(c)(1)(A). As such, "[c]ourts are not required to decide class certification before reaching the merits of a case." <u>Kurtz</u>, 2017 WL 1155398, at *18.

Winslow does not object to consideration of Defendants' legal summary judgment arguments prior to consideration of her motion for class certification. Indeed, she agrees that the motion schedule and discovery stay were established in anticipation of determination of Defendants' potentially dispositive legal arguments, to be followed by determination of her cross-motion for class certification. Plaintiff's Reply Memorandum of Law in Support of Class Certification ("Pl. Reply Mem. in Supp. of Class Cert.") at 1, DE 67. Plaintiff does, however, object to consideration of any factual argument, or foregoing a ruling on class certification pending the outcome of fact-based defenses. Pl. Reply Mem. in Supp. of Class Cert. at 7.

As to these threshold procedural issues, the Court agrees with Plaintiff. This case was commenced in 2015, and Tier II discovery has yet to be complete. The reason for the delay is in large part due to Defendants' request for a stay. The District Court granted the stay – and Plaintiff agreed – based upon Defendants' statement that only legal arguments would be raised on their summary judgment motion. This Court will decide the legal questions on Defendants' motion for summary judgment, and then turn to Plaintiff's motion for class certification.

B.    <u>Legal Issues To Be Decided</u>

Upon review of the parties' submissions the Court notes that Defendants rely on several documents, previously undisclosed to Plaintiff, that are purported to establish facts that entitle them to summary judgment. In particular, Defendants' documents address and seek judgment as

a matter of law as to: (1) the adequacy of F&G's attorney review of Plaintiff's file prior to institution of the State Court Action; (2) acts taken with respect to collection and charge off of the Loan; (3) the extent of the individual Defendants' involvement in collection efforts with respect to the Loan, and (4) the extent of the Trust's New York business activities.

Defendants' submission of documents purported to establish facts is in direct contravention of their argument that the present summary judgment motion would be amenable to disposition without reference to documents outside of the pleadings that have not been previously disclosed in discovery, or subject to review by Plaintiff. This Court has reviewed the transcript of the January 11, 2017 conference before District Judge Azrack. DE 65, Ex. 3. That transcript supports clearly the agreement among the parties and with the District Court that no further discovery was required prior to consideration of Defendants' summary judgment motion, and that the motion would argue for judgment on the basis of discreet legal issues. See Schlanger Decl. ¶ 46, DE 65-2. This Court observes, however, that discovery that would allow Plaintiff to meaningfully respond to the documents submitted in support of Defendants' motion has yet to be concluded or – for that matter – started. Moreover, counsel agreed that witnesses with knowledge of such subjects would be deposed as part of Tier II discovery. Shlanger Decl. ¶ 40, DE 65-2.

In view of the foregoing, this Court holds that while certain issues are ripe for summary judgment, the disposition of others in the context of summary judgment is inappropriate because such disposition would necessarily rely on many of the documents submitted in support of Defendants' motion. Accordingly, upon review of the issues raised, and the parties' submissions this Court holds that at this juncture it may appropriately consider, and will address only the following issues, which may be decided as a matter of law at this time:

- Whether the statement that the Trust is an "original creditor" violated the FDCPA and/or Section 349;

- Whether the statements as to the Trust's "authorization" to proceed with the State Court Action violated the FDCPA and/or Section 349;

- Whether Plaintiff's pleadings with regard to the Trust's activities in New York State are adequate to state a claim.

- The overall legal viability of the Section 349 claim;

- Whether abstention is appropriate, and

- Whether the Individual Defendants are entitled to summary judgment.

These questions are legal in nature, and therefore appropriate to address at this point in the proceedings. However, the Court will not decide the extent of the Trust's New York activities, or issues that turn on whether Defendants conducted a meaningful attorney review prior to commencement of the State Court Action. While the Court will decide whether the Individual Defendants are entitled to summary judgment, it will not decide whether these Defendants are, in fact, individually liable in this lawsuit. Such matters must await disposition until discovery is complete.

II.     The Motion for Summary Judgment: Legal Principles

    A.     Summary Judgment Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to establish the lack of any factual issues. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). An otherwise properly supported motion for summary judgment will not be defeated because of "the mere existence of some alleged factual dispute between the

parties." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Rather, the requirement is that there be no "genuine issue of material fact." Id. at 248. When considering a motion for summary judgment, the Court must draw all inferences from the underlying facts in the light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). When the moving party has carried its burden, the party opposing summary judgment must do more than simply show that "there is some metaphysical doubt as to the material facts." Id. at 586. Moreover, the party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleadings, but ... must set forth specific facts showing there is a genuine issue for trial." Anderson, 477 U.S. at 248.

When considering a motion for summary judgment, the district court "must also be 'mindful of the underlying standards and burdens of proof' ... because the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." S.E.C. v. Meltzer, 440 F. Supp. 2d 179, 187 (E.D.N.Y. 2006) (quoting Brady v. Town of Colchester, 863 F.2d 205, 211 (2d Cir. 1988)) (internal citations omitted); see also Maco v. Baldwin Union Free Sch. Dist., at * 3 (E.D.N.Y. 2017). "Where the non-moving party would bear the ultimate burden of proof on an issue at trial, the burden on the moving party is satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim." Meltzer, 440 F. Supp. 2d at 187; see also Schwartz v. Schwartz, 2017 WL 4023132, at *3 (E.D.N.Y. 2017), report and recommendation adopted by, 2017 WL 4023129 (E.D.N.Y. 2017).

B. FDCPA: Legal Principles

The FDCPA prohibits debt collectors from the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C.A. § 1692e.

15

Byran v. I.C. Sys., Inc., 2017 WL 4326041, at *3 (E.D.N.Y. 2017). The statute sets forth a list of various representations which are prohibited, including, inter alia, "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken," and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." U.S.C.A. § 1692e(5), e(10). The statutory list is non-exhaustive. As such, "a debt collection practice can be a 'false, deceptive, or misleading' practice in violation of § 1692e even if it does not fall within any of the subsections of § 1692e." Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir. 1993); Fritz v. Resurgent Cap. Servs., LP, 955 F. Supp. 2d 163, 169 (E.D.N.Y. 2013).

Congress enacted the FDCPA to protect consumers. Moukengeschaie v. Eltman, 2016 WL 1274541 (E.D.N.Y. 2016). To that end, courts in this circuit evaluate FDCPA "misstatement" claims based from the objective perspective of the "least sophisticated consumer." Baptiste v. Carrington Mtge. Servs., Inc., 2017 WL 2861670, at *2 (E.D.N.Y. 2017); see Ellis v. Solomon & Solomon, P.C., 591 F.3d 130, 135 (2d Cir. 2010). Even under this broad standard, "not every technically false representation by a debt collector amounts to a violation of the FDCPA." Gabriele v. Am. Home Mortg. Servicing, Inc., 503 Fed. App'x. 89, 94 (2d Cir. 2012). Instead, the statement at issue must be material to be actionable under the FDCPA. See Fritz, 955 F. Supp. 2d at 170. A false statement is deemed material if it would "influence a consumer's decision or ability to pay or challenge a debt.'" Hines v. HSBC Bank USA, 2016 WL 5716749, at *10 (E.D.N.Y. 2016) (quoting Kassel v. Univ. Fidelity LP, 2014 WL 824335, at *2 (E.D.N.Y. 2014) (internal citation omitted)). In light of the objective nature of the least sophisticated consumer standard, "the determination of how the least sophisticated consumer

would view language" presents a question of law. <u>Baptiste</u>, 2017 WL 2861670, *2 (E.D.N.Y. 2017) (citations omitted).

C.    <u>Section 349: Legal Principles</u>

Section 349 makes it unlawful to commit "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service…." N.Y. Gen. Bus. Law § 349. Section 349 allows for enforcement by the New York State Attorney General, as well as for private rights of action. Such actions may seek injunctive relief, damages and attorneys' fees. <u>Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.</u>, 85 N.Y.2d 20, 24, 623 N.Y.S.2d 529, 532 (1995). To establish a violation under Section 349, a plaintiff must demonstrate: (1) that the act or practice was consumer oriented; (2) that it was misleading in a material respect; and (3) that the plaintiff was injured as a result. <u>Wilson v. NW Mut. Ins. Co.</u>, 625 F.3d 54, 64 (2d Cir. 2010); <u>see also</u> <u>Martinez v. Lvnv Funding, LLC</u>, 2016 WL 5719718, at *3 (E.D.N.Y. 2016).

The "consumer oriented" prong is satisfied by showing that the acts forming the basis of the complaint are not private disputes but instead could have a broad impact on "consumers at large." <u>Oswego</u>, 85 N.Y.2d at 25, 623 N.Y.S.2d at 532. Thus, acts within the statute must "potentially affect similarly situated consumers." <u>Oswego</u>, 85 N.Y.2d at 27, 623 N.Y.S.2d 529, 533; <u>Fritz</u>, 955 F. Supp. 2d at 173.  In the context of debt collection cases, the "consumer oriented" prong is satisfied where the conduct forming the basis of the complaint was a "normal part of defendants' business," in which case the practice could "have a broad impact on consumers at large." <u>Jordan v. Tucker, Albin and Assocs., Inc.</u>, 2017 WL 2223918, at *8 (E.D.N.Y. 2017) (quoting <u>Fritz</u>, 955 F. Supp. 2d at 173).

As to materiality, Section 349 requires a showing that the allegedly deceptive conduct is "likely to mislead a reasonable consumer acting reasonably under the circumstances.'" <u>Oswego</u>, 85 N.Y.2d at 25, 623 N.Y.S.2d at 529; <u>see</u> <u>Nick's Garage, Inc. v. Progressive Cas. Ins. Co.</u>, 875 F.3d 107, 124 (2d Cir. 2017). Like the FDCPA, this "reasonable consumer" standard is objective, and plaintiff need not show reliance on the deception. <u>Id.</u> The Section 349 "reasonableness" standard is more difficult to establish than the FDCPA "least sophisticated consumer standard." <u>Fritz</u>, 955 F. Supp. 2d at 174. Finally, the Court notes that Section 349 does not require that a plaintiff to be a consumer of a product or service provided by the defendant. <u>See</u> <u>Oswego</u>, 85 N.Y.2d at 25; <u>see e.g.</u>, <u>Campbell v. MBI Assocs., Inc.</u>, 98 F. Supp. 3d 568, 587 (E.D.N.Y. 2015).

III.     <u>Summary Judgment as to the FDCPA Claims</u>

     A.     <u>The Claims</u>

Plaintiff's FDCPA claims allege that Defendants made false representations as to the Trust's status as an "original creditor," and as to its "authorization" to proceed with the State Court Action. With respect to the "original creditor" claim, Winslow asserts that because her debt was originated by Bank of America, Defendants' designation of the Trust as the original creditor is simply false. As to the "authorization" claim, Plaintiff relies on the Trust's failure to file a designation certificate and pay fees owed to the New York State Secretary of State prior to commencing litigation in New York State. <u>Id.</u> Plaintiff's final FDCPA claims alleges that Defendants failed to conduct a meaningful review of Plaintiff's loan status prior to commencing the State Court Action in violation of §§1692e, 1692e(3), 1692e(5), 1692e(l0), and 1692f.

     B.     <u>Disposition of the FDCPA Claims</u>

     1.     <u>The Original Creditor Claim</u>

As noted, Plaintiff claims that reference to the Trust as the original creditor is false because the entity that extended the Loan to Plaintiff was Bank of America, and not the Trust. Defendants contend that the statement is not false because the Trust became the "original creditor" and owner of Plaintiff's debt when it was "charged off." In support of their motion, Defendants rely on the definition of the term "original creditor" as it appears in the New York State Uniform Rules for New York Trial Courts ("Uniform Rules"). Def. Mem. in Supp. of SJ at 4.

The Uniform Rule upon which Defendants rely states that "original creditor" means: "the financial institution that owned the consumer credit account at the time the account was charged off, even if that financial institution did not originate the account." It defines "charged off" consumer debt as "a consumer debt that has been removed from an original creditor's books as an asset and treated as a loss or expense." 22 N.Y.C.R.R. § 202.27-a.

While this language may at first appear to support Defendants' position, a full reading of the statute makes clear that the statute does not apply here, and in no way requires dismissal of Plaintiff's claims of falsity. First, the Uniform Rule relied upon appears under the heading of "Defaults" (§ 202.27), and the subheading "Proof of default judgement in consumer credit matters (Uniform Civil Rules for the Supreme Court and the County Court)" (§ 202.27a). The State Court Action was a first attempt to collect a debt, and was not an action seeking enforcement of a previously entered default judgment. Moreover, the same section that defines "original creditor," states that in actions where an original creditor is seeking a default judgment, the original creditor must submit an affidavit of facts and supporting documentation, including credit agreements and charge-off information. 22 N.Y.C.R.R. § 202.27(c), (d). Furthermore, even if the Uniform Rule definition of "original creditor" applied to the State Court Action, it

would not require summary dismissal of Plaintiff's FDCPA claim because the state court action

was filed by Defendants in May of 2014, and the definitional provisions relied upon did not take

effect until October 1, 2014.

More importantly, New York State procedural and definitional rules for seeking

enforcement of a default judgment are vastly different than the definitions that Congress chose to

use in the FDCPA. Indeed, as Justice Gorsuch noted in a recent FDCPA decision, the statutory

definitions are precise. Thus, Justice Gorsuch stated:

> In the very definitional section [], Congress expressly differentiated between a
> person "who offers" credit (the originator) and a person "to whom a debt is owed"
> (the present debt owner). § 1692a(4). Elsewhere, Congress recognized the
> distinction between a debt "originated by" the collector and a debt "owed or due"
> another. § 1692a(6)(F)(ii). And elsewhere still, Congress drew a line between the
> "original" and "current" creditor. § 1692g(a)(5).

Henson v. Santander Consumer USA Inc., 137 S. Ct. 1718, 1723, 198 L. Ed. 2d 177 (2017).

As the FDCPA draws distinctions between the party who offers credit, and a person to

whom a debt is owed, and a line between original and current creditor, there can be no question

but that pursuant to the FDCPA, the original creditor with respect to the Loan is Bank of

America. Here, it is undisputed that the complaint in the State Court Action falsely identifies the

Trust as the original creditor.  It also confusingly states that "Defendant [Winslow] borrowed

money from Plaintiff or Plaintiff's Assignor pursuant to a promissory note. See DE 1, Ex. A. It is

of no moment that the Trust owned the debt at the time it was allegedly "charged off." According

to § 1692g(a)(5), that would simply mean that at the time of the charge off, the Trust was the

current creditor, but not the original creditor. In light of the plain meaning of the word "original",

the FDCPA definitions, and the fact that the Uniform Rules mandate no particular definition of

original creditor within the context of federal law, this Court hold that Defendants' statement that

the Trust was the original creditor is a false and misleading statement.

Further, the Court holds that this false statement as to the Trust's status as the "original creditor" is material as a matter of law. As noted in <u>Fritz v. Resurgent Capital Servs., LP</u>, 955 F. Supp. 2d 163, a false statement as to the owner of a debt "could easily mislead the least sophisticated consumer as to the nature and legal status" thereof and could "impede the consumer's ability to respond." <u>Id.</u> at 171. <u>Accord</u> <u>Tourgeman v. Collins Fin. Servs.</u>, 755 F.3d 1109, 1121-22 (9th Cir. 2014) (misrepresentation as to the identity of the original creditor was a critical piece of information that was material under the FDCPA); <u>Valle v. Green Tree Servs., LLC.</u>, 2017 WL 1053848, at *6 (D. Conn. 2017).

      2.    <u>The "Authorization" to Proceed Claim</u>

      i.    <u>The Parties' Positions</u>

In support of the claim that the statement as to the Trust's "authorization" to proceed is false, Winslow relies on Section 18 of the New York State General Association Law ("Section 18"). That statute requires trusts doing business in New York to file a certificate of designation with the New York State Secretary of State before they are permitted to commence a lawsuit in New York State Court. Plaintiff notes, and Defendants concede for the purpose of this motion, that the Trust did not file a certificate under Section 18. Plaintiff argues that in light of this fact, the statement in the complaint in the State Court Action that the Trust was "authorized" to proceed is materially false in violation of the FDCPA. Defendants argue that it did not violate the FDCPA because: (1) Plaintiff does not plead facts sufficient to state a claim of doing business in New York (2) even if properly pled, the Trust is nonetheless entitled to summary judgment because its minimal contacts with New York do not constitute "doing business" sufficient to require Section 18 registration and (3) that even if the Trust were required to register under Section 18, any failure to do so is immaterial under the FCPA as a matter of law.

Section 18 states, in relevant part, that associations doing business in New York State "shall not maintain any action . . . unless and until such association has filed the certificate of designation prescribed by [Section 18] and it has paid to the state all fees, penalties and franchise taxes for the years or parts thereof during which it did business in this state without having filed" the required designation. N.Y. Gen. Ass'ns. L. §18(4).

A foreign corporation is deemed to be doing business in the State of New York, if it engages "in continuous, systematic and regular activity in the state." Carvalho v. Mel S. Harris & Assocs., L.L.C., 2004 WL 1555193, at *1 (E.D.N.Y. 2004) (citing Int'l Fuel & Iron Corp. v. Donner Steel Co., 151 N.E. 214, 215 (N.Y. 1926); Interline Furniture, Inc. v. Hodor Indus., Corp., 527 N.Y.S.2d 544, 545, 140 A.D.2d 307, 308 (2d Dep't. 1988)). Isolated incidents and activities which are "merely incidental to the corporation's business in interstate or international commerce" are insufficient to establish that the corporation is doing business in New York. Id. In the absence of proof, a presumption exists that the foreign corporation is doing business in the state in which it was incorporated. Airline Exchange, Inc. v. Bag, 698 N.Y.S.2d 694, 695, 266 A.D.2d 414, 415 (2d Dep't. 1999).

iii.    The Motions are Denied

As an initial matter, the Court notes that in addition to seeking summary judgment, Defendants appear to argue that Plaintiff's pleading as to the Trust doing business in New York are insufficient to survive a Rule 12 motion to dismiss. See Def. Mem. in Supp. of SJ at 14-15, DE 60-1. The Court disagrees. Plaintiff has alleged that the Trust maintains an office in New York City, is organized under New York law, is composed of significantly New York debt, and enters into contracts (including buying and selling its securities) in New York. Compl. ¶ 36(a)-

(d). Further, she has provided evidence that the Trust states its principal place of business and principal office as "230 Park Avenue, New York, New York." <u>See</u> Shlanger Dec. ¶ 54, Ex. 7 at Bates 446, DE 65-3. In view of the foregoing, the Court finds Plaintiff's allegations adequately and plausibly allege that the Trust is doing business in New York.

The Court turns next to the issue of whether Defendants are entitled to summary judgment as to their argument that the Trust does not, as a matter of fact, conduct enough business to be deemed to be doing business in New York. As to this argument, Defendants argue that the Trust conducts business in Delaware, and not in New York where its contacts are characterized as merely incidental. The problem with Defendants' argument, as Plaintiff points out, is that it is premature. In view of the adequacy of Plaintiff's pleading, and the factual nature of the doing business argument, this Court holds that summary judgment as to the necessity of registering with the New York registering with the New York State Secretary of State must be denied. Any such argument may be renewed at the conclusion of discovery.

Defendants' final summary argument contends that the statement as to the Trust's authorization to proceed with the State Court Action is immaterial as a matter of law, and therefore cannot violate the FDCPA. Specifically, Defendants argue that a failure to comply with Section 18 cannot be deemed material because it has no effect on Plaintiff's debt obligation, and is curable. In support of their argument, Defendants reason that if the State Court Action were challenged on the failure to register ground, the complaint in that action could be amended, or dismissed without prejudice. Plaintiff, on the other hand, and in reliance on the materiality standard set forth above, contends that a deceptive statement as to whether the Trust was authorized to proceed with the action is material. According to Winslow, Defendants "miss the mark by observing that it may be possible for a debt collector to avoid dismissal if the

designation certificate is promptly filed." DE 65 at 11. She reasons that the appropriate inquiry here is not whether an action barred by Section 18 would definitely be dismissed, but instead whether the possibility of dismissal is capable of influencing a consumer's decision. See Kaff v. Nationwide Credit, Inc., 2015 WL 12660327, at *6 (E.D.N.Y. 2015) (citations and internal quotations marks omitted)).

Applying the FDCPA materiality standard set forth above, this Court holds that if the Trust was required to register under Section 18, and falsely stated that it was authorized to sue Plaintiff in a New York State court, that misstatement was a material misstatement because it may prevent a debtor from asserting a valid defense. See Williams v. Optical Prod. Corp., 170 Misc. 277, 277-78, 8 N.Y.S.2d 755, 756 (New York County 1938) (dismissing an action after determining that the plaintiff failed to "meet the requirement of the statute" when the "certificate required by the statute had not been filed at the time of the commencement of [the] action but was filed subsequent to its commencement.").

Plaintiff's claim here is analogous to the claim raised, and sustained as material in Fritz v. Resurgent Capital Servs., LP, 955 F. Supp. 2d 163 (E.D.N.Y. 2013). There, the court held that a debt collector's false representation in a state court complaint as to its debt-collection license was material, and, therefore stated a claim for false, deceptive, or misleading practice pursuant to the FDCPA. Id. at 171. The court there reasoned that a false representation that a company "held a debt-collection license could easily have led an unsophisticated consumer to forgo a valid defense" to the state collection action. Id. Similarly here, a false representation that a company is authorized to proceed with a state court action might lead a defendant to forgo a valid defense, and is therefore material.

The Court notes that both parties rely on <u>Moukengeschaie v. Eltman</u>, 2016 WL 1274541 (E.D.N.Y. 2016). This Court has reviewed that case, and holds that it supports a holding that Defendants statement was material. Under <u>Moukengeschaie</u>, materiality exists because if the State Court Complaint were subject to dismissal, the filing of that complaint constitutes a threat to take action that was not authorized under law. <u>See id.</u>, at *11 (where New York Law required that plaintiff receive notice of assignment of a debt and plaintiff received no such notice, defendants could not collect on the unassigned judgment, and any threat to do so was a material misstatement). For the foregoing and final reason, summary judgment on the ground that the statement as to the Trust's authorization to proceed is denied. The denial is, however, without prejudice to renewal at the close of discovery.

       3.      <u>The "Meaningful Review" Claim</u>

Defendants rely on depositions and allegedly "undisputed facts" in support of its position that they are entitled to summary judgment on the claim that they failed to conduct a meaningful review of Plaintiff's case prior to filing the State Court Action. In reality, the facts Defendants rely upon are in dispute and therefore, this issue is not ripe for summary judgment. The motion is denied without prejudice to renewal after the completion of discovery.

IV.      <u>The Section 349 Claims</u>

      A.      <u>The Claims and Defendants' Arguments</u>

Plaintiff's Section 349 claims rely on the same facts alleged in support of her FDCPA claims. Apart from arguing that Plaintiff fails to show the elements of a Section 349 claim, Defendant argues that this claim must be dismissed on the ground that it is barred by Section 601 of the New York State General Business Law, a statute addressing the legality of certain debt collection practices ("Section 601"). Specifically, Defendants argue that Plaintiff's Section 349

claim is an attempt to circumvent the fact that there is no private right of action under Section 601. Defendants also argue that Plaintiff lacks standing to pursue a Section 349 claim because she is not a consumer of F&G's product or service. Finally, Defendants argue that even if Plaintiff's Section 349 claim is not barred by Section 601 or a lack of standing, Defendants are nonetheless entitled to summary judgment because Plaintiff cannot satisfy the "consumer-oriented" or damages prongs of her claim.

B.    Disposition of Motion as to the Section 349 Claims

i.    Section 601 Does Not Bar Plaintiff's Section 349 Claim

Defendants correctly assert that where a Section 349 complaint alleges no more than a violation of Section 601, the Section 349 claim is barred. See Conboy v. AT&T Corp., 241 F.3d 242, 258 (2d Cir. 2001). However, "simply because a given set of facts would give rise to" claims under both Sections 601 and 349, the latter claim is not necessarily barred. Martinez v. Lvnv Funding, LLC, 2016 WL 5719718, at *3 (E.D.N.Y. 2016); accord Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP, 2016 WL 791271, at *5 (S.D.N.Y. Feb. 27, 2016). Thus, a Section 349 claim may properly plead a claim "that might also overlap with a claim" Section 601. Martinez, 2016 WL 5719718, at *3. The critical question for the Court to determine is whether Plaintiff has, indeed, set forth a Section 349 claim that, even if overlapping, states a claim independent of a Section 601 violation. Id.

At the outset, this Court notes that Section 349 has routinely been employed to obtain redress for victims of deceptive statements made in connection with the collection of a debt, and that such a claim states a cause of action separate from a claim under Section 601. E.g., Campbell v. MBI Assocs., Inc., 98 F. Supp. 3d 568, 587 (E.D.N.Y. 2015); Aghaeepour v. N. Leasing Sys., Inc., 2015 WL 7758894, at *14 (S.D.N.Y. 2015), order corrected on denial of

reconsideration, 2016 WL 828130 (S.D.N.Y. 2016). Further, as discussed below, Plaintiff here

succeeds in stating a claim that survives this motion. The Court therefore rejects the argument

that Plaintiff's Section 349 Claim is barred as an impermissible attempt to circumvent Section

601.

ii.     Standing

Defendants next argue that Plaintiff lacks standing to pursue a Section 349 claim because

she is not a consumer of F&G's product or service. See Conboy v. AT&T Corp., 241 F.3d 242

(2d Cir. 2001)). Contrary to Defendants' argument, Section 349 does not require that a plaintiff

be a consumer of a product or service provided by the defendant. See Oswego, 85 N.Y.2d at 25;

see e.g., Campbell v. MBI Assocs., Inc., 98 F. Supp. 3d 568, 587 (E.D.N.Y. 2015). Accordingly,

the Court rejects Defendants' motion on this ground.

iii.    Summary Judgment is Not Warranted as to the
        Consumer Oriented or Damages Elements of a Section 349 Claim

Here, it is undisputed that Defendants have filed numerous complaints stating that they

"are the original creditor" and that the Trust "is authorized to proceed with the action." Claims

arising under Section 349 need not allege "a repetition or pattern of deceptive behavior" so long

as the conduct alleged "potentially affect[s] similarly situated consumers." Oswego, 85 N.Y.2d at

25, 26-27.  There is no doubt that Defendants' allegedly deceptive conduct involves a much

larger amount of consumer debt than Winslow's debt alone, and "has a broad impact on

consumers at large." Fritz, 955 F. Supp. 2d at 163. Accordingly, Defendants are not entitled to

summary judgment on the ground that Plaintiff cannot establish that the conduct charged is not

consumer oriented.

The Court also holds that the statement as to the Trust's original creditor status is not

only material within the "least sophisticated consumer" standard of the FDCPA, but also

materially misleading under Section 349. Thus, the Courts holds, as a matter of law, that this statement, viewed objectively, might lead a debtor to be confused as to the nature of the debt sought to be collected and is therefore misleading within the meaning of Section 349. As to F&G's "authorization" to proceed with its lawsuit, summary judgment is not warranted on the ground that any such statement is not misleading as a matter of law. As held above with respect to the FDCPA claim, the motion as to this statement is denied without prejudice to renewal at the close of discovery. Finally, the Court holds that Defendants are not entitled to summary judgment on the ground that Plaintiff cannot show damages. Claims under Section 349 do not require a showing of pecuniary harm, and the argument that Plaintiff was subject to unnecessary litigation is sufficient to support her claim of damages. Oswego, 85 N.Y.2d at 26.

For the foregoing reasons the Court denies summary judgment as to Plaintiff's claims pursuant to Section 349.

V.     Abstention

A.     Legal Principles and the Parties' Positions

Abstention is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188–89 (1959); see also Fritz, 955 F. Supp. 2d at 175. It may only be raised in "exceptional circumstances," id. at 189, where parallel state-court litigation could result in "comprehensive disposition of litigation." Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976) (internal quotation marks omitted). Thus, abstention may only be granted upon a determination that concurrent proceedings are "parallel." Dittmer v. Cty. of Suffolk, 146 F.3d 113, 118 (2d Cir. 1998) ("a finding that concurrent proceeding are 'parallel' is a necessary prerequisite to abstention under Colorado River."). " 'Suits are parallel when

substantially the same parties are contemporaneously litigating substantially the same issue in another forum.' " Dittmer v. Cty. of Suffolk, 146 F.3d 113, 118 (2d Cir. 1998) (quoting Day v. Union Mines Inc., 862 F.2d 652, 655 (7th Cir. 1988)).

Defendants assert that Plaintiff's FDCPA claim against F&G goes to the very heart of the State Court Action, as the instant action specially alleges that Trust does not have capacity to bring suit. Defendants, therefore, aver that the only proper forum to raise this defense is in the state court and not before this Court on an FDCPA claim. Winslow claims that the two actions are not parallel because, other than Winslow, the named parties are different, and the cases allege different claims, and seek different relief. She further argues that resolution of one case does not necessarily resolve the other.

B.      The Motion for Summary Judgment on the Ground of Abstention is Denied

Upon consideration of the above-referenced principles, this Court holds that this action is distinct from the State Court Action and that therefore abstention is not required. The present action involves Defendants' use of allegedly false and misleading debt-collection methods, while the State Court Action concerns the validity of an underlying debt. The two actions seek different relief, apply different bodies of law, and, other than Winslow, name different parties.

In apparent recognition of these facts, Defendants, assert, in a footnote, assert that "New York law and court procedures are more than adequate to protect Plaintiff's rights." Def. Mem. Reply in Supp. of SJ at 7, n. 2, DE 61. Although, that may be true, there is no indication that Plaintiff has filed a counterclaim in the state court action alleging the same claims. In view of this fact and those set forth above, the two actions are not parallel. Summary judgment is denied on this ground.

VI.     The Motion as to the Individual Defendants

Defendants seek summary judgment as to all claims against the Individual Defendants. In support of this branch of their motion, Defendants note that the only allegations against these defendants is that they are principals and owners of F&G who had "final, supervisory authority over all form documents… used by [F&G]," and that such allegations are insufficient to state a claim of individual liability. The Court disagrees with Defendants' position and holds that Plaintiff's allegations are sufficient to state a claims for individual FDCPA liability as well as individual liability under Section 349. See Reade-Alvarez v. Eltman, Eltman & Cooper, P.C., 369 F. Supp. 2d 353, 362 n.6 (E.D.N.Y. 2005)(denying a motion to dismiss FDCPA claims against individual defendants because "viewing the allegations in . . . a light most favorable to plaintiffs the individual defendants are debt collectors and were personally involved in the collection of debts at issue."); Polanco v. NCO Portfolio Mgmt., Inc., 132 F. Supp. 3d 567, 584 (S.D.N.Y. 2015) (noting that although "the Second Circuit has not ruled on the issue, Courts in this Circuit and other Circuit Courts have concluded that principals or corporate parents may be held vicariously liable for their agents' or subsidiaries' actions that violated the FDCPA where the principals are themselves 'debt collectors.'"). In view of the fact that Defendants set forth no facts appropriate to refute these allegations in the context of the present motion, Defendant's motion for summary judgment (or any motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure) is denied.

VII.    The Motion for Class Certification

    A.    Factual Issues as to the Size of the Proposed Classes

Before turning to the merits of the class certification motion the Court notes a dispute that has arisen regarding the size of the classes that Plaintiff proposes to represent. This dispute has

arisen as a result of conflicting numbers regarding class size that were provided to Plaintiff by Defendants as described below.

Specifically, on April 8, 2017, defense counsel provided its "supplemental response to outstanding Tier 1 discovery," which stated the class size for NCSLT T2005-1, 2005-2 and 2005-3 FDCPA and Section 349. Shlanger Decl. ¶ 27, DE 65-2; see also DE 66-4 at 2 (Defendants' Response to Supplemental Discovery). As a result of this production, Plaintiff argues that Defendants have conceded that the proposed class consists of some 2480 consumers, including 790 FDCPA subclass members. Shlanger Decl. ¶ 28, DE 65-2. Despite Defendants' concession, their motion for summary judgment now sets forth dramatically lower numbers regarding class size. Defendants base these new numbers on the Declaration of Bradley Luke, a "Senior Litigation Paralegal at Transworld Systems, Inc. . . . the Subservicer for National Collegiate Student Loan Trust 2005-3." Id. ¶ 32.

Plaintiff argues that the Luke Declaration should not be considered by the Court because Mr. Luke was never disclosed as a potential witness, and Plaintiff has never had an opportunity to question him about the authenticity or reliability of the exhibits attached to his declaration, many of which were never before shared with Plaintiff. As Tier I discovery is now closed, Plaintiff contends that Mr. Luke's testimony cannot be considered on summary judgment pursuant to Rule 37(c) of the Federal Rules of Civil Procedure ("Rule 37(c)").

The Court agrees with Plaintiff. Rule 37(c) prohibits a party who "fails to provide information or identify a witness as required by Rule 26(a) or (e)" from using "that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). There is no question but that the information in the Luke Declaration was not provided to Plaintiff prior to this motion. As such, it will not be considered

by the Court in the context of its decision. The Court turns to the merits of Plaintiff's motion for class certification.

B.     The Proposed Classes

Winslow seeks to represent the following class and two subclasses:

a.  The Class:

     i.    Natural persons;

     ii.   Who were sued by National Collegiate Student Loan Trust 2005 ("National Collegiate");

     iii.  In a New York state court consumer collection action;

     iv.  In an action in which F&G represented National Collegiate;

     v.   And in which the Complaint states that (a) "Plaintiff is authorized to proceed with this actions" and/or (b)"Plaintiff is the original creditor."

b.  The FDCPA Subclass

     i.    All those who meet the class criteria set forth in the class description above and who, in addition, were sent the said complaint within one year of the initiation of the instant class action.

c.  The NYGBL § 349 Subclass

     i.    All those who meet the class criteria set forth in the class description above and who, in addition, were sent the said complaint within three years of the initiation of the instant class action.

See Pl. Mot. for Class Cert. DE 66, Ex. 1 at 1.

C.     Legal Principles

Pursuant to Rule 23(a), a party seeking certification of a class must establish that: (1) the class is sufficiently numerous, (2) there are common class questions of law or fact, (3) class plaintiff's claims are typical of those of the class, and (4) the proposed class representative will adequately represent the interests of the class. Myers v. Hertz Corp., 624 F.3d 537, 547 (2d Cir. 2010); Fed. R. Civ. P. 23(a).

Upon a showing that the Rule 23(a) requirements have been satisfied, Rule 23(b)(3) requires that the party seeking certification to show that common questions of law or fact "predominate over any questions affecting only individual members' and that class treatment would be superior to individual litigation." <u>Lopez v. Setauket Car Wash & Detail Ctr.</u>, 314 F.R.D. 26, 28 (E.D.N.Y. 2016) (quoting <u>Myers</u>, 624 F.3d at 547)); Rule 23(b)(3).

D. <u>Disposition of the Motion</u>

Arguing that all of the factors set forth above are met, Winslow seeks class certification of the class and subclasses described above. Defendants' motion argues primarily that the motion for class certification must be denied because summary judgment must be granted. Indeed, Defendants do not make any arguments with regard to the Rule 23 factors. DE 62 at 1. Since summary judgment has been denied in all aspects, the motion for class certification is largely unopposed, but not moot. Accordingly, the Court now turns to consider the relevant factors to determine whether class certification is appropriate.

1. <u>Rule 23(a)</u>

i. <u>Numerosity</u>

The Second Circuit has stated that "numerosity is presumed at a level of 40 members." <u>Consolidated Rail Corp. v. Town of Hyde Park</u>, 47 F.3d 473, 483 (2d Cir. 1995); <u>see also</u> <u>Lopez</u>, 314 F.R.D. at 28; <u>Gortat v. Capala Bros.</u>, 949 F. Supp. 2d 374, 383 (E.D.N.Y. 2013), <u>aff'd sub nom.</u>, <u>Gortat v. Capala Bros., Inc.</u>, 568 Fed. App'x. 78 (2d Cir. 2014). In the instant case Defendants have represented to Plaintiff's counsel that 3,370 consumers were sent letters which stated that National Collegiate was the "original creditor" or that it was "authorized" to sue in New York (or both) – 890 of whom were sent the complaints within one year of the filing of this action. <u>See</u> Schlanger Decl., Ex. 1.

Defendants argue, in a footnote, that the "numerosity" figure of 3,370 suggested by Plaintiff is entirely fictional and derived from the improper inclusion of suits filed by NCSLT 2005-1 and NCSLT 2005-2 in the suit count. NCSLT 2005-1 and NCSLT 2005-2 have neither ownership interest in Ms. Winslow's loan, nor any relationship to NCSLT 2005-3, and that the "bottom line is that there are one-hundred and eight (108) lawsuits in the one-year FDCPA class and four-hundred and thirteen (413) in the three year GBL § 349 class period." Def. Mem. in Opp. to Class Cert. at 4 n.2.

Regardless of whether Defendants' pre-motion representations to Plaintiff, or its representations in its opposition papers are correct, it is clear there are certainly over forty potential class members in Plaintiff's proposed class. As such, the numerosity factor is satisfied.

ii. <u>Commonality</u>

Pursuant to Rule 23(a), a plaintiff must share "questions of law or fact common to the class." Rule 23(a)(2). To satisfy the commonality requirement, "the class members [must] have suffered the same injury." <u>Wal–Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338, 131 S. Ct. 2541, 2551, 180 L.Ed.2d 374 (2011). Claims are not required to be identical. Instead, the claims must allege a common issue that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." <u>Id.</u>

Here, all of the class members received the same, or similar, form complaints from Defendants (which were also filed in New York state court), seeking to collect consumer debts. Each of these claims contains allegedly deceptive representations as to the identity of the original creditor and/or the Trust's authorization to sue. As such, the resolution as to each of the claims

"'will resolve an issue that is central to the validity of each one of the claims…'" <u>Sykes v. Mel S. Harris & Associates LLC</u>, 780 F.3d 70, 84 (2d Cir. 2015) (quoting <u>Dukes</u>, 131 S. Ct. at 2551).

Defendants have previously argued, but have failed to raise in their opposition papers, that insufficient discovery has been completed to allow a determination as to whether there are common facts with respect to whether the complaints were subject to meaningful review, DE 47 at 2-3. The Court finds this argument unpersuasive. Plaintiff has based her claims on standardized conduct by Defendants – the filing and mailing of boilerplate complaints in consumer collections actions containing the same deceptive and false statements. Additionally, Defendants have indicated that over 2,400 nearly identical complaints (containing allegedly false identification as to the original creditor and/or the assertion that the Trust is authorized to sue) were served on others similarly situated. Schlanger Decl., Ex. 8, 65-3-160. As such, there is sufficient evidence at this time to support an inference that Defendants failed to verify meaningful information, and, thereby, failed to meaningfully reviewing all of the pleadings.

The Court further holds that even if there are differences relevant to the review of each complaint, such differences do not destroy commonality. That is because Winslow's claims and the proposed class members' claims stem "from the same course of conduct, [] raise common issues of law and fact, [] and are based on the same legal theories…." <u>See</u> <u>Morris v. Alle Processing Corp.</u>, 2013 WL 1880919, at *9–10 (E.D.N.Y. 2013); <u>see also</u> <u>Iglesias-Mendoza v. La Belle Farm, Inc.</u>, 239 F.R.D. 363, 371 (S.D.N.Y. 2007) (noting that the commonality and typicality requirements can be satisfied even when factual variations exist) (collecting cases).

  iii. <u>Typicality</u>

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The requirements for typicality are "satisfied when each

class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendants liability." <u>Robidoux v. Celani</u>, 987 F.2d 931, 936 (2d Cir. 1993) (citations omitted).

Under some circumstances, "'[t]he commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" <u>Sykes v. Mel S. Harris & Associates LLC</u>, 780 F.3d 70, 80 (2d Cir. 2015) (alterations in original) (quoting <u>Dukes</u>, 131 S. Ct. at 2551 n. 5). Although claims need not be identical, "'class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation.'" <u>Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.</u>, 222 F.3d 52, 59 (2d Cir. 2000) (quoting <u>Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 903 F.2d 176, 180 (2d Cir. 1990)). Indeed, when making a finding of typicality, the court must determine "the fairness of allowing an entire class's claim to rise or fall with the fate of the named representative's claims." <u>Indergit v. Rite Aid Corp.</u>, 293 F.R.D. 632, 652 (S.D.N.Y. 2013) (citations omitted).

In this case, the claims arise from the common question of whether Defendants' alleged misrepresentations violated the FDCPA and Section 349. Both statutes are judged according to an objective standard. The Court concludes that the claims and defenses of Winslow are typical of those of the class and this requirement is satisfied

      iv.    <u>Adequacy of Representation</u>

"Adequacy of representation is evaluated in two ways: (1) by looking to the qualifications of plaintiffs' counsel; and (2) by examining the interests of the named plaintiffs." Lopez, 314 F.R.D. 26, 29 (E.D.N.Y. 2016) (citations and internal quotation marks omitted). Based upon Plaintiff's submissions, the Court finds that Plaintiffs and Plaintiff's counsel are adequate to permit certification.

v.      Ascertainablity

The implied ascertainability requirement of Rule 23 is satisfied if "[a]n identifiable class exists if its members can be ascertained by reference to objective criteria." In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig., 209 F.R.D. 323, 337 (S.D.N.Y. 2002) (citations and internal quotation marks omitted); see also Martinez v. Ayken, Inc., 2016 WL 5107143, at *14 (E.D.N.Y. 2016). Here, Plaintiff has an objective criteria as set forth in her class definition above. As such, she has satisfied this requirement.

2.      Rule 23(b)

Plaintiff seeks class certification as a hybrid under Rule 23(b)(2) and Rule 23(b)(3). "As such, plaintiffs must meet both the requirements for the particular relief, injunctive or monetary, sought under those two rules…." Sykes, 780 F.3d at 80.

i.      Rule 23(b)(2)

Plaintiff seeks declaratory and injunctive relief that would declare Defendants' attempts to collect debts by filing and sending deceptive complaints a violation of the FDCPA and Section 349, and enjoin Defendants from engaging in this conduct in the future. As the Supreme Court has made clear, "certification of a class for injunctive relief is only appropriate where 'a single injunction ... would provide relief to each member of the class.'" Sykes, 780 F.3d at 97 (quoting Dukes, 131 S. Ct. at 2557 and citing Amara v. CIGNA Corp., 775 F.3d 510, 522 (2d Cir. 2014)).

Here enjoining Defendants from continuing to make false representations will provide relief for the entire class. Accordingly, certification under Rule 23(b)(2) is appropriate.

    ii.    <u>Rule 23(b)(3)</u>

Under Rule 23(b)(3), a court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23. Rule 23(b) additionally requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The Court finds that there are common questions regarding 1) Defendants' practices in bringing collection actions in New York State, 2) the validity of Defendants' statements made on state court actions concerning whether it is the original owner of debt and whether it is authorized to bring New York State court actions, and 3) whether the Trust is authorized to bring a state court action. Due to the standardized nature of Defendants' conduct in the case, such as boilerplate language and deceptive complaints, common questions predominate over individualized claims. Further, in this District courts have found that "common questions of law and fact surrounding the contents and mailing of [standardized form collection] letters predominate over individual issues." <u>Mailloux v. Arrow Fin. Servs., LLC</u>, 204 F.R.D. 38, 42 (E.D.N.Y. 2001) (quoting <u>Harrison v. Great Springwaters of Am., Inc.</u>, 1997 WL 469996, at *9 (E.D.N.Y. 1997) (quoting <u>D'Alauro v. GC Servs. Ltd. P'ship</u>, 168 F.R.D. 451, 458 (E.D.N.Y. 1996)).

The Court additionally finds that the superiority requirement of Rule 23(b)(3) is satisfied. In cases such as this, not all potential class members have knowledge of the claims. Additionally, as only a limited amount of damages are likely available, individual class members may not have interest in litigating the matter. Moreover, it is more efficient to decide a single set of facts and single theory for liability in one case, rather than having multiple litigants bring individual actions on the same – or substantially similar – causes of action. Thus, the Court finds that that the superiority requirement of Rule 23(b)(3) is satisfied. <u>See</u> <u>In re Risk Mgmt. Alternatives, Inc., Fair Debt Collection Practices Litig.</u>, 208 F.R.D. 493, 507 (S.D.N.Y. 2002) ("Suits brought under the FDCPA such as this case regularly satisfy the superiority requirement of Rule 23."). As such, Plaintiff may certify the class under Rule 23(b)(3).

CONCLUSION

Defendants' motion for summary judgment is denied in all respects. As set forth above and to summarize:

- The statement as to the Trust's "original creditor" status violated both the FDCPA and Section 349 as a matter of law;

- The motion for summary judgment is denied, without prejudice, with respect to statements as to the Trust's "authorization" to proceed with its state court action;

- The motion for summary judgment is denied, without prejudice, as to the liability of the Individual Defendants;

- The motion for summary judgment on the ground of abstention is denied with prejudice.

Plaintiff's motion for class certification under Rules 23(b)(2) and (3) is granted.

Counsel shall appear before this Court for an in person status conference at 10:30am on January 18, 2018.

SO ORDERED


 /s/ Anne Y. Shields
Anne Y. Shields
United States Magistrate Judge

December 13, 2017
Central Islip, New York